ILLINOIS BELL TELEPHONE COMPANY, Plaintiff-Appellee, *v.* FAIR EMPLOYMENT PRACTICES COMMISSION *et al.*, Defendants-Appellants.— ILLINOIS BELL TELEPHONE COMPANY, Plaintiff-Appellee, *v.* FAIR EMPLOYMENT PRACTICES COMMISSION *et al.*, Defendants-Appellants.

First District (2nd Division)   Nos. 77-1396, 77-1397 cons.

Opinion filed February 6, 1979.—Rehearing denied March 8, 1979.

J. Stuart Garbutt and Lynn R. Sterman, both of Chicago, for appellant Fair Employment Practices Commission.

Ronald W. Staudt and Claire E. Pensyl, law student, both of Chicago, for appellants Geraldine Rone, Shirley Roe, and Lenesta Lyles.

Barbara J. Hillman, of Cornfield and Feldman, of Chicago, for appellant Gail M. Pratt.

John W. McNulty, Stephen S. Schulson, and Thomas H. W. Sawyer, all of Chicago, for appellee.

Mr. JUSTICE HARTMAN delivered the opinion of the court:

Plaintiff, Illinois Bell Telephone Company (hereinafter "Bell"), provides for its employees a "Wage Continuation Plan" as a fringe benefit for periods of nonoccupational, temporary, medically approved sickness or off-the-job injuries, paying said disabled employees a percentage of their regular wages for a limited number of weeks commencing with the second week of disability. The sole exceptions from this plan are employees temporarily disabled because of normal pregnancies, who are placed on uncompensated maternity leaves of absence and sustain a reduction in fringe benefits as well as a loss of seniority after the first 30 days of absence. Pregnancy cases in which complications arise (e.g., "morning sickness") during active service are eligible for sickness disability benefits.

Individual defendants Rone, Roe, Lyles and Pratt are employees who were placed on uncompensated maternity leaves of absence, and, in two separate cases, subsequently filed charges against Bell with defendant Illinois Fair Employment Practices Commission (hereinafter "FEPC"), alleging that plaintiff had impermissibly discriminated against them because of their sex under section 3(a) of the Illinois Fair Employment Practices Act (hereinafter "FEPA") (Ill. Rev. Stat. 1975, ch. 48, par. 853(a)) by virtue of the denial of wage continuation payments and other benefits during the periods of their pregnancy-related disabilities.

Following an evidentiary hearing before an FEPC hearing examiner, who recommended that the FEPC find the issues in favor of defendants, the FEPC on March 20, 1975, found that Bell's exclusion of pregnancy from its "Wage Continuation Plan" discriminated against defendants because of their sex and that said discrimination was not excused by FEPC in its "Guidelines On Discrimination Because of Sex" (hereinafter "Guidelines"). Administrative review proceedings were initiated in the circuit court of Cook County by plaintiff.

These consolidated appeals are from an order of the circuit court entered on July 19, 1977, which reversed the FEPC's decision essentially on two grounds: first, that the decision of the United States Supreme Court in *General Electric Co. v. Gilbert* (1976), 429 U.S. 125, 50 L. Ed. 2d 343, 97 S. Ct. 401, was dispositive of the legal issues presented and should be followed by Illinois courts; and, second, that the FEPC's Guidelines in effect at the time of defendants' maternity leaves of absence approved plaintiff's practice of denying maternity wage continuation benefits.

For the reasons set forth below, we reverse.

Section 3(a) of the FEPA (Ill. Rev. Stat. 1975, ch. 48, par. 853(a)) provides in pertinent part as follows:

"It is an unfair employment practice:

(a) For any employer, because of the * * * sex * * * of an individual, * * * to refuse to hire, to segregate, or otherwise to discriminate against such individual with respect to hire, selection and training for apprenticeship in any trade or craft, tenure, terms or conditions of employment; * * *."

There is no statutory definition with respect to those kinds of activities which would constitute sex discrimination.

The trial court held that, by virtue of the similarities to be found in title VII of the United States Civil Rights Act of 1964 (42 U.S.C. §2000e *et seq.*) and section 3(a) of the Illinois statute, together with construction of the Federal statute by the United States Supreme Court in *General Electric Co. v. Gilbert* (1976), 429 U.S. 125, 50 L. Ed. 2d 343, 97 S. Ct. 401, finding that "* * * an exclusion of pregnancy from a disability-benefits plan providing general coverage is not a gender-based discrimination at all" (429 U.S. 125, 136, 50 L. Ed. 2d 343, 354, 97 S. Ct. 401, 408), Illinois and the FEPC "* * * should follow, if not from conviction, then in the name of consistency." The able and learned trial judge did not have the benefit of a significant addition to the Federal statute demonstrating a contrary congressional intent, which was enacted after his decision, nor cases decided after *Gilbert*, demonstrating rather a consistent refusal on the part of the majority of courts to follow *Gilbert*.

On October 31, 1978, section 701(k) of the Civil Rights Act of 1964 was signed into law adding a definition to the Act which demands a view of the statute from a different perspective, providing, in pertinent part:

"The terms 'because of sex' or 'on the basis of sex' include, but are not limited to, because of or on the basis of pregnancy, childbirth, or related medical conditions; and women affected by pregnancy, childbirth, or related medical conditions shall be treated the same for all employment-related purposes, including receipt of benefits under fringe benefit programs, as other persons not so affected but similar in their ability or inability to work, and nothing in section 703(h) of this title shall be interpreted to permit otherwise."

The language of section 701(k) makes clear that Congress disagreed with the interpretation placed upon the pregnancy discrimination issue by the *Gilbert* decision. This inference is buttressed by the commentary set forth in the Report of the Committee on Education and Labor of the House of Representatives which stated, in part:

"It is the Committee's view that * * * dissenting justices [Brennan, Marshall and Stevens in *General Electric Co. v. Gilbert*, 429 U.S.

125] correctly interpreted the act. \* \* \* \* We recognize that the enactment of H.R. 6075 will reflect no new legislative mandate of the Congress nor affect changes in practices, costs, or benefits beyond those intended by title VII of the Civil Rights Act."

Even in the absence of section 701(k) of title VII, recent cases from other jurisdictions, which were decided after the *Gilbert* decision by the Supreme Court and after the decision of the trial court herein, almost unanimously support the conclusion we reach. (*Massachusetts Electric Co. v. Massachusetts Commission Against Discrimination* (Mass. 1978), 375 N.E.2d 1192; *Quaker Oats Co. v. Cedar Rapids Human Rights Com.* (Iowa 1978), 268 N.W.2d 862; *Castellano v. Linden Board of Education* (1978), 158 N.J. Super. 350, 386 A.2d 396; *Anderson v. Upper Bucks County Area Vocational Technical School* (1977), 30 Pa. Commw. Ct. 103, 373 A.2d 126.) (Contra, *Narragansett Electric Co. v. Rhode Island Commission for Human Rights* (R.I. 1977), 374 A.2d 1022; *Group Hospitalization, Inc. v. District of Columbia Commission on Human Rights* (D.C. 1977), 380 A.2d 170.) Decisions by courts in other States, preceding that of the circuit court of Cook County herein, deciding contrary to its conclusion, include *Brooklyn Union Gas Co. v. New York State Human Rights Appeal Board* (1976), 41 N.Y.2d 84, 390 N.Y.S.2d 884, 359 N.E.2d 393; *Ray-O-Vac v. Wisconsin Department of Industry, Labor & Human Relations* (1975), 70 Wis. 2d 919, 236 N.W.2d 209; *Cedar Rapids Community School District v. Parr* (Iowa 1975), 227 N.W.2d 486. See also Comment, *Love's Labors Lost: New Conceptions of Maternity Leave*, 7 Harv. Civ. Rights-Civ. Lib. L. Rev. 260 (1972); Johnston, *Sex Discrimination and the Supreme Court—1971-1974*, 49 N.Y.S. L. Rev. 617 (1974); Comment, *Pregnancy and the Constitution: The Uniqueness Trap*, 62 Calif. L. Rev. 1532 (1974); Comment, Geduldig v. Aiello: *Pregnancy Classifications and the Definition of Sex Discrimination*, 75 Colum. L. Rev. 441 (1975); Comment, *Pregnancy and Employment Benefits*, 27 Baylor L. Rev. 767 (1975).

Representative of the viewpoints expressed by the foregoing authorities is the well-reasoned opinion in *Massachusetts Electric Co. v. Massachusetts Commission Against Discrimination* (Mass. 1978), 375 N.E.2d 1192 which held (375 N.E.2d 1192, 1198-99):

"In considering whether the exclusion of benefits for pregnancy-related disabilities from a comprehensive disability plan violates G.L.c. 151B, §4, the initial inquiry necessarily involves determining whether distinctions based on pregnancy are sex-linked classifications. Pregnancy is a condition unique to women, and the ability to become pregnant is a primary characteristic of the female sex. Thus, any classification which relies on pregnancy as the determinative criterion is a distinction based on sex. *General Elec.*

*Co. v. Gilbert,* 429 U.S. 125, 149, 97 S. Ct. 401, 414, 50 L. Ed. 2d 343 (1976) (Brennan, J., dissenting) ('Surely it offends common sense to suggest . . . that a classification revolving around pregnancy is not, at the minimum, strongly "sex related" '). *Id.* at 161-162, 97 S. Ct. at 421 (Stevens, J., dissenting) ('By definition, . . [placing pregnancy in a class by itself] discriminates on account of sex; for it is the capacity to become pregnant which primarily differentiates the female from the male'). *Gilbert v. General Elec. Co.,* 375 F. Supp. 367, 381 (E.D. Va. 1974), reversed, 429 U.S. 125, 97 S. Ct. 401, 50 L. Ed. 2d 343 (1976) ('[Pregnancy] is undisputed[ly] and inextricably sex-linked. . . . That [exclusion of pregnancy-related disabilities] is discriminatory by reason of sex is self evident'). See *Black v. School Comm. of Malden,* 365 Mass. 197, 209-211, 310 N.E.2d 330 (1974).

The exclusion of pregnancy-related disabilities, a sex-based distinction, from a comprehensive disability plan constitutes discrimination. While men are provided comprehensive coverage for all disabilities which will necessitate their absence from work, including male-specific disabilities, women are not provided the assurance of comprehensive protection from the inability to earn income during a period of disability. * * * [Citations.] Pregnancy exclusions in disability programs 'both financially burden women workers and act to break down the continuity of the employment relationship, thereby exacerbating women's comparative transient role in the labor force'. * * * [Citations.] Moreover, pregnancy exclusions reflect and perpetuate the stereotype that women belong at home raising a family rather than at a job as permanent members of the work force. * * *"

It is also noteworthy that the decisions of the six Federal courts of appeal which predate *General Electric Co. v. Gilbert* (1976), 429 U.S. 125, 50 L. Ed. 2d 343, 97 S. Ct. 401, concordantly concluded that pregnancy exclusions violated title VII and constituted unlawful sex discrimination. *Communications Workers of America v. American Telephone & Telegraph Co.* (2d Cir. 1975), 513 F.2d 1024, *vacated* (1977), 429 U.S. 1033, 50 L. Ed. 2d 744, 97 S. Ct. 724; *Wetzel v. Liberty Mutual Insurance Co.* (3d Cir. 1975), 511 F.2d 199, *vacated* (1976), 424 U.S. 737, 47 L. Ed. 2d 435, 96 S. Ct. 1202; *Gilbert v. General Electric Co.* (4th Cir. 1975), 519 F.2d 661, *reversed* (1976), 429 U.S. 125, 50 L. Ed. 2d 343, 97 S. Ct. 401; *Satty v. Nashville Gas Co.* (6th Cir. 1975), 522 F.2d 850, *vacated in part* (1977), 434 U.S. 136, 54 L. Ed. 2d 356, 98 S. Ct. 347; *Hutchison v. Lake Oswego School District No. 7* (9th Cir. 1975), 519 F.2d 961, *vacated* (1977), 429 U.S. 1033, 50 L. Ed. 2d 744, 97 S. Ct. 725.

Since its decision in *Gilbert,* it appears that the Supreme Court has

itself retreated from its position in two cases treating pregnancy-employment problems with a somewhat different outlook. (*Nashville Gas Co. v. Satty* (1977), 434 U.S. 136, 54 L. Ed. 2d 356, 98 S. Ct. 347; *City of Los Angeles v. Manhart* (1978), 435 U.S. 701, 55 L. Ed. 2d 657, 98 S. Ct. 1370.) Especially to be noted is the concurring opinion of Mr. Justice Blackmun in *Manhart*.

■■ ■ Although judicial interpretations from other jurisdictions are entitled to great weight when similarly worded statutes are involved, and particular deference must be given to opinions of the United States Supreme Court, since we are here construing a State statute we are not bound to follow the wavering beacon provided by *Gilbert*. (*Ray Schools-Chicago-Inc. v. Cummins* (1957), 12 Ill. 2d 376, 380-81.) From the foregoing we hold that section 3(a) of the FEPA (Ill. Rev. Stat. 1975, ch. 48, par. 853(a)) prohibits the exclusion of the condition of normal pregnancy from the Wage Continuation Plan and other disability benefits provided by Bell.

Bell argues further that the circuit court properly precluded the FEPC from taking a position directly contrary to its Guidelines adopted in 1971, which provided in pertinent part as follows:

> "XI. Insurance, Pension and Retirement Plans.
>
> (a) The Commission considers that it is a violation of the Act for an employer or labor organization to order, contract for or participate in a group life or health insurance or other 'fringe benefit' plan which discriminates among employees or members on the basis of sex. However, differences in contributions, benefits or other provisions in such plans which are adopted in good faith based on sound actuarial data may not be deemed to violate the Act.
>
> (b) The Commission considers that a pension or retirement plan or rule which provides for different optional or mandatory retirement ages based on sex violates the Act."

The language appearing in Guideline XI(a) which provides that "* * * differences in contributions, benefits or other provisions in such plans which are adopted in good faith based on sound actuarial data *may* not be deemed to violate the Act" (emphasis added) is somewhat ambiguous and could be read to support the conclusion that one following such language could be led to believe that pregnancy exclusions adopted in good faith and based on actuarial data *would* not be violative of the Act. This argument loses its persuasive force, however, in light of the fact, admitted by counsel for Bell on oral argument of this case, that the record is devoid of any evidence that Bell indeed relied upon the Guidelines to its detriment.

■■ The argument is made by Bell that the State's authority to proceed

against plaintiff with respect to the instant action is preempted by the Federal Employee Retirement Income Securities Act of 1974 (hereinafter referred to as "ERISA") (29 U.S.C. par. §1001 *et seq.* (1976)). Specifically, plaintiff relies upon that language contained in section 514(a) of the Act which provides that any and all State laws insofar as they may now or hereafter relate to any employee benefit plan described in section 1003(a) of ERISA would be deemed superseded by the provision of the Federal act, which includes under section 514(c)(2) the State or any of its agencies purporting to regulate directly or indirectly the terms and conditions of employee benefit plans covered therein. As defendants point out, however, section 514(d) provides that nothing in the Act shall be construed to alter, amend, modify, invalidate, impair or supersede any law of the United States, thereby leaving intact title VII of the Civil Rights Act of 1964. That statute specifically denied any Congressional intent to preempt State employment discrimination laws (sections 708, 1104, 42 U.S.C. §§2000e—7, 2000h—4 (1976)). In the recent case of *Liberty Mutual Insurance Co. v. State Division of Human Rights* (1978), 61 App. Div. 2d 822, 402 N.Y.S.2d 218, a similar issue was raised and rejected particularly since ERISA makes no attempt to deal with fair employment practices and cannot then be considered as having preempted the field. No authority cited by plaintiff in the instant case holds to the contrary. To the same effect as *Liberty Mutual Insurance Co.* are *Bucyrus-Erie Co. v. Department of Industry, Labor & Human Relations* (E.D. Wis. 1978), 453 F. Supp. 75; *Gast v. State* (Ore. App. 1978), 585 P.2d 12; and *Westinghouse Electric Corp. v. State Human Rights Appeals Board* (1978), 60 App. Div. 2d 943, 401 N.Y.S.2d 597.

■■ Plaintiff also contends that defendants failed to establish any period of actual medical disability, submitting that the finding of disability by the FEPC in upholding the hearing examiner's conclusions are not supported by any evidence in the record nor by any medical evidence demonstrating as to when, if ever, defendants were physically unable to perform their work duties. Plaintiff refers to a stipulation between the parties which provides:

"At all times material herein, if the [individual defendants] * * * had qualified for sickness disability payments, these payments would have been computed for [their] * * * respective periods of medically established disability on the basis of the following:

Weekly rate of pay=$125

| | |
|---|---|
| First week | - 4 days pay |
| Next 4 weeks | - full pay |
| Next 48 weeks | - half pay |
| Thereafter | - no pay" |

Each of the individual defendants testified at the hearing before the FEPC examiner concerning her physical condition during her period of

pregnancy and thereafter, and the examiner made findings of fact as to specific periods of disability for each on the basis of that testimony. This evidence was in no way controverted by plaintiff's witnesses. Plaintiff was apparently unwilling to support this point with evidence before the hearing examiner in the light of what it conceived to be nonliability by virtue of its theory of this case. Moreover, Bell's policy was to refuse to permit defendants' participation in the Wage Continuation Plan or pay any normal pregnancy disability claims, thereby rendering the introduction of further evidence on this point by defendants a useless act. In this posture of the case, defendants did all that might reasonably have been demanded of them. The parties will be deemed bound by the record which they made before the hearing examiner and the FEPC on this issue.

Accordingly, this cause is reversed and remanded for further proceedings not inconsistent with the views herein expressed.

Reversed and remanded.

STAMOS, P. J., and PERLIN, J., concur.