International Ladies' Garment Workers' Union, Local Union No. 111 and the International Ladies' Garment Workers' Union, Appellants v. Human Relations Commission of the City of Allentown, Appellee.

230

Argued April 10, 1980, before Judges WILKINSON, JR., MENCER and MACPHAIL, sitting as a panel of three.

*Charles W. Johnston, Jr., Handler and Gerber,* P.C., for appellants.

*Jack I. Kaufman,* Assistant City Solicitor, with him .. *Kathryn Wohlsen Mayer,* Assistant City Solicitor, for appellee.

OPINION BY JUDGE MENCER, July 24, 1980:

The International Ladies' Garment Workers' Union, Local Union No. 111 (Union) appeals from an order of the Court of Common Pleas of Lehigh County, which affirmed an order of the Allentown Human Relations Commission (Commission). We reverse.

On June 28, 1977, Debra Werner and Alice Peters filed complaints with the Commission,[1] alleging that they were pregnant and that the Union's health and welfare plan, which did not treat pregnancy claims the same as other disabilities, discriminated against them because of their sex. After several hearings, the Commission concluded that the Union had violated the Commission's ordinance prohibiting sex discrimination. The lower court agreed and this appeal followed.

The Union argues that Section 514 of the Employee Retirement Income Security Act of 1974 (ERISA), 29 U.S.C. §1144, expressly preempts the Commission's regulation of the Union's benefit plan and that, therefore, the Commission was without jurisdiction to decide the matter.[2] The Commission, while recognizing ERISA's broad preemption, nevertheless argues that ERISA was not intended to preempt state fair employment laws.

We recognize that there is a split of authority among those courts which have addressed this issue.[3]

---

[1] The claim of Debra Werner was eventually dismissed.

[2] Although the lower court determined that the Union waived this issue by failing to pursue it below, since this issue raises a question of subject matter jurisdiction, it is properly before us. *Tops Apparel Mfg. Co. v. Rothman,* 430 Pa. 583, 244 A.2d 436 (1968).

[3] For those jurisdictions holding that ERISA does not preempt state fair employment laws, *see, e.g., Bucyrus-Erie Co. v. Dep't of*

Although our Superior Court has recently determined that ERISA does not preempt state fair employment laws,[4] we must conclude, after careful reflection, that the reasoning of those courts advocating preemption are more persuasive.

Section 514(a) of ERISA expressly provides that "the provisions of this subchapter ... shall supersede *any and all State laws* insofar as they may now or hereafter *relate to any employee benefit plan* described in [29 U.S.C. §1003(a)] and not exempt under [29

---

*Indus., Labor & Human Relations,* 599 F.2d 205 (7th Cir. 1979); *Brown Co. v. Dep't of Indus., Labor & Human Relations,* 48 U.S.L.W. 2210 (W.D. Wis. 1979); *Time Ins. Co. v. Dep't of Indus., Labor & Human Relations,* 46 U.S.L.W. 2369 (Wis. Cir. Ct. 1978); *Insurers' Action Council, Inc. v. Heaton,* 423 F. .Supp. 921 (D. Minn. 1976); *Illinois Bell Tel. Co. v. Fair Employment Practices Comm'n,* 68 Ill. App. 3d 829, 386 N.E.2d 599 (1979); *Franklin Mfg. Co. v. Iowa Civil Rights Comm'n,* 270 N.W.2d 829 (Iowa 1978); *Minnesota Mining & Mfg. Co. v. State,* Minn. , 289 N.W.2d 396 (1979); *Mountain States Tel. Co. v. Comm'n of Labor,* 21 Fair Empl. Prac. Cases 212 (Mont. Sup. Ct. 1979); *Westinghouse Elec. Corp. v. State Div. of Human Rights Appeal Bd.,* 401 N.Y.S.2d 597, 60 App. Div. 2d 943 (1978); *cert. denied* 439 U.S. 1073 (1979); *Gast v. State,* 36 Or. App. 441, 585 P.2d 12 (1978); *Goodyear Tire & Rubber Co. v. Dep't of Indus., Labor & Human .Relations,* 87 Wis. 2d 56, 273 N.W.2d 786 (1978).

For those jurisdictions holding that ERISA preempts state fair employment laws, *see, e.g., Delta Airlines, Inc. v. Kramarsky,* 21 Fair Empl. Prac. Cases 1429 (S.D.N.Y. 1980); *Pervel Indus., Inc. v. Connecticut,* 468 F. Supp. 490 (D. Conn. 1978); *aff'd,* 603 F.2d 214 (2d Cir. 1979); *Standard Oil Co. of Cal. v. Agsalud,* 442 F. Supp. 695 (N.D. Cal. 1977); *American Chain & Cable Co. v. Iowa Civil Rights Comm'n,* C.E. 6-2938 (Polk Dist. Ct., Iowa, June 28, 1978); *State v. MMM Co.* (Dep't of Human Rights Decision, Minn., Sept. 16, 1977).

[4] *Lukus v. Westinghouse Elec. Corp.,* Pa. Superior Ct. , 419 A.2d 431 (No. 910 April Term, 1978, filed January 4, 1980). *See also Shaw v. Westinghouse Elec. Corp.,* Pa. Superior Ct. , 419 A.2d 175 (No. 107 April Term, 1979, filed March 14, 1980).

U.S.C. §1003(b)]." (Emphasis added.) "State law" is defined in 29 U.S.C. §1144(c)(1) as follows: "The term 'State law' includes all laws, decisions, rules, regulations, or other State action having the effect of law, of any State." "State" is defined in 29 U.S.C. §1144(c)(2) as follows: "The term 'State' includes a *State, any political subdivisions thereof, or any agency or instrumentality of either,* which purports to regulate, *directly or indirectly, the terms and conditions of employee benefit plans* covered by this subchapter." (Emphasis added.) It is undisputed that the Union's plan is an employee benefit plan as defined in, and subject to, ERISA.[5]

This language clearly evidences an intent by Congress to preempt the field. "[T]he Court doubts that Congress could have chosen any more precise language to express its intent to preempt a state statute ... insofar as it seeks to regulate ERISA-covered employee benefit plans...." *Hewlett-Packard Co. v. Barnes*, 425 F. Supp. 1294, 1297 (N.D. Cal. 1977). Virtually every court that has considered this issue has recognized the broad preemptive intent of Congress. *See, e.g., Francis v. United Technologies Corp.*, 458 F. Supp. 84, 86 (N.D. Cal. 1978) ("This language was intended to effect the broadest possible preemption of state law. The inclusion of all state laws which 'relate to' any ERISA plan was an attempt to make this preemption cover laws which were not specifically directed at this subject area, but which still affected it"); *In re C.D. Moyer Co. Trust Fund*, 441 F. Supp. 1128, 1131 (E.D. Pa. 1977), *aff'd*, 582 F.2d 1273 (3d Cir. 1978) ("This statute was specifically intended to preempt any state regulation of employee benefit plans"). *See also Wadsworth v. Whaland*, 562 F.2d 70 (1st Cir. 1977); *National Carriers' Conference Committee v. Heffer-*

---

[5] See 29 U.S.C. §§1002(1), 1003(a).

*nan,* 454 F. Supp. 914 (D. Conn. 1978); *Azzaro v. Harnett,* 414 F. Supp. 473 (S.D.N.Y. 1976), *aff'd,* 553 F.2d 93 (2d Cir.), *cert. denied,* 434 U.S. 824 (1977); *Lukus v. Westinghouse Electric Corp., supra* note 4; Hutchinson & Ifshin, *Federal Preemption of State Law under the Employee Retirement Income Security Act of 1974,* 46 Chi. L. Rev. 23 (1978).[6]

This preemption must be given effect, for it constitutes an exercise by Congress of its powers under the supremacy clause. U.S. Const. art. VI, cl. 2. *See Bell v. Employee Security Benefit Association,* 437 F. Supp. 382 (D. Kan. 1977). Since the language of the statute unequivocally expresses its meaning, we need not discuss the legislative history. *Caminetti v. United States,* 242 U.S. 470 (1917). Nevertheless, a brief examination of the legislative history, as outlined in *Delta Airlines, Inc. v. Kramarsky, supra* note 3, at 1431-32, solidifies the conclusion that Congress intended broad preemption:

> [T]he scope of the preemption clause is fully as broad as its language suggests. Both the House and Senate Conference Committees rejected earlier versions of the clause which would have limited preemption to areas of specific conflict between state and federal law. Thus, the House version originally would have superseded state law only 'insofar as they may now of hereafter relate to the reporting and disclosure responsibilities, and fiduciary responsibilities, of persons acting on behalf of any employee benefit plan ...,' 120 Cong. Rec. 4742 (1974), while the Senate version would have superseded state laws only 'insofar as they may now or hereafter

---

[6] The only state statutes specifically excluded from the operation of the preemption clause are those regulating insurance, banking, or securities, or generally applicable state criminal law, 29 U.S.C. §1144(b), none of which are applicable here.

relate to the subject matters regulated by this Act....' 120 Cong. Rec. 5002 (1974). Instead of adopting one of these narrow provisions, Congress opted for broad preemption language. According to Senator Javits, the ranking minority member of the Senate Committee on Labor and Public Welfare, this action was taken to avoid the possibility of:

'endless litigation over the validity of State action that might impinge on Federal regulation, as well as opening the door to multiple and potentially conflicting State Laws hastily contrived to deal with some particular aspect of private welfare or pension benefit plans not clearly connected to the Federal regulatory scheme.' 120 Cong. Rec. 29942 (1974).

The sponsors of the bill in both the House and Senate also described the scope of the clause in sweeping terms. Senator Harrison Williams, the Senate sponsor, stated during his presentation of the bill that, with the narrow exceptions specified in the bill, the preemption principle 'is intended to apply in its broadest sense to all actions of State or local governments, or any instrumentality thereof, which have the force or effect of law.' 120 Cong. Rec. 29933 (1974). Similarly, John Dent, the House sponsor, stated that the 'crowning achievement' of ERISA was its reservation to the federal government of the sole power to regulate the field of employee benefit plans:

'The conferees, with the narrow exceptions specifically enumerated, *applied this principle in its broadest sense to foreclose any non-Federal regulation of employee benefit plans.* thus, the provisions of section 514 would reach any rule, regulation, practice or decision of any

State, subdivision thereof or any agency or in-
strumentality thereof — including any profes-
sional society or association operating under
color of law — *which would affect any employee
benefit plan* as described in section 4(a) and not
exempt under section 4(b).' 120 Cong. Rec.
29197 (1974) (emphasis added).

Moreover, Opinion letters issued by the Depart-
ment of Labor have interpreted the legislative history
of Section 514 as indicating a congressional intent to
occupy the field. *See* Department of Labor Opinion
Letter 76-90 (July 14, 1976); Department of Labor
Opinion Letter 76-84 (June 22, 1976); Department of
Labor Opinion Letter 75-130 (July 18, 1975). *See also*
Activity Report of the committee on Education and
Labor of the United States House of Representatives,
House Report No. 94-1785, at 46-47 (January 3, 1977)
("the legislative scheme of ERISA is sufficiently broad
to leave no room for effective State regulation within
the field preempted").

The line of cases relied upon by the Commission,
including *Lukus v. Westinghouse Electric Corp., supra*
note 4, have upheld state fair employment laws
against a claim of preemption by ERISA for the
following reasons: (1) The "peripheral concern"
argument — state fair employment laws are of only
peripheral concern to ERISA and, therefore, Congress
did not intend to preempt these state laws; and (2) the
"double savings clause" contention — since ERISA does
not preempt nonconflicting federal law, Section
514(d), 29 U.S.C. §1144(d),[7] and since Section 708 of

---

[7] 29 U.S.C. §1144(d) provides:

(d) Nothing in this subchapter shall be construed to
alter, amend, modify, invalidate, impair, or supersede any
law of the United States (except as provided in sections
1031 and 1137(b) of this title) or any rule or regulation
issued under any such law.

Title VII, 42 U.S.C. §2000e-7, does not preempt state antidiscrimination laws,[8] then ERISA, like Title VII, does not preempt nonconflicting state laws. We find these reasons ingenious but unpersuasive.

We simply cannot accept the notion that state fair employment laws do not "relate to" employee benefit plans covered by ERISA. The preemption language is certainly broad enough to extend to state fair employment laws. Moreover,

> [t]here is simply *no basis* in the language of §514(a) for distinguishing between *types* of state laws all of which 'relate to' employee benefit plans. When Congress says 'any and all State laws,' courts cannot conclude that Congress really meant to say 'some but not all State laws.'

> The language of §514(c)(2) buttresses this interpretation. In §514(c)(2), Congress defined the term 'State' to include 'a State, any political subdivisions thereof, or any agency ... which purports to regulate, *directly or indirectly*, the terms and conditions of employee benefit plans....'

*Standard Oil Co. of California v. Agsalud, supra* note 3, at 707. (Emphasis added.)

The double savings clause contention has been rejected in *Pervel Industries, Inc. v. Connecticut, supra* note 3, and we agree with the reasoning as set forth in Judge Newman's opinion:

---

[8] 42 U.S.C. §2000e-7 provides:

Nothing in this subchapter shall be deemed to exempt or relieve any person from any liability, duty, penalty, or punishment provided by any present or future law of any State or political subdivision of a State, other than any such law which purports to require or permit the doing of any act which would be an unlawful employment practice under this subchapter.

This Court does not accept the reasoning of this double savings clause contention. Section 514(d) of ERISA preserves *federal* law. [The Commission's] anti-discrimination law does not become a federal law simply because Title VII preserves its validity as against a claim of preemption by Title VII. Nor is the textual argument significantly enhanced by focusing on §514(b)'s requirement that ERISA should not be contrued to 'impair' any law of the United States. Preemption of [the Commission's Ordinance] by ERISA does not impair any federal law. Title VII did not create new authority for state antidiscrimination laws; it simply left them where they were before the enactment of Title VII....

Defendants stress the concern expressed in Congress during enactment of ERISA that plan benefits be made available on a non-discriminatory basis. In both the Senate and the House, anti-discrimination amendments were withheld upon the specific assurances of floor leaders of the legislation that plans covered by ERISA would be covered by §703(a) of Title VII, 42 U.S.C. §2000e-2(a). 120 Cong. Rec. 4726 (1974), 119 Cong. Rec. 30409-10 (1973). But nowhere in the floor debates is any concern expressed, nor any assurance given, that *state* anti-discrimination laws will apply to plans covered by ERISA. In fact the colloquy in both chambers points in exactly the opposite direction. Both the floor managers of ERISA and those who sought assurance that non-discrimination amendments were not needed expressed concern that any such amendments might detract from the thrust toward centralized administration of non-discrimination in

employment by the Equal Employment Opportunities Commission.

468 F. Supp. at 493. (Footnote omitted.) (Emphasis in original.)

*See also Delta Airlines, Inc. v. Kramarsky, supra,* note 3.[9]

Several of the courts adopting the savings clause contention did so because of their concern that a regulatory vacuum would exist in the area of pregnancy disability benefits if the state laws were preempted. *see, e.g., Gast v. State, supra* note 3; *Westinghouse Elec. Corp. v. State Division of Human Rights Appeal Board, supra* note 3; *Time Insurance Co. v. Department of Industry, Labor & Human Relations, supra* note 3, since Title VII did not require that pregnancy benefits be paid as part of an employee health and benefit plan. *General Electric Co. v. Gilbert,* 429 U.S. 125 (1976). This concern has been mooted, however, with the passage of the Pregnancy Discrimination Act (PDA), P.L. 95-555, 92 Stat. 2076 (approved October 31, 1978), which legislatively overrules *Gilbert* and prohibits sex discrimination on the basis of pregnancy.[10] The Equal Employment Opportunity

---

[9] We also note that claimant here brought suit under a *municipal ordinance.* Thus, in order for us to conclude that the Commission had jurisdiction, we would have to extend the double savings clause contention to a *third* level, reasoning that since the *State's* antidiscrimination act does not preempt municipal ordinances, Section 12 of the Pennsylvania Human Relations Act, Act of October 27, 1955, P.L. 744, *as amended,* 43 P.S. §962, therefore ERISA does not preempt the Commission's action. Since we have rejected the double savings clause contention, a fortiori we reject this triple savings clause analysis.

[10] Senator Javits did not enter a bill to specifically exempt state antidiscrimination laws because he believed that PDA has mooted the issue. 125 Cong. Rec. 5575 (daily ed. Jan. 24, 1979). PDA has withstood a constitutional challenge. *Nat. Conf. of Catholic Bishops v. Bell,* 21 Empl. Prac. Dec. 30, 524 (D.D.C. Jan. 15, 1980).

Commission has developed guidelines, which provide that "[d]isabilities caused or contributed to by pregnancy ... shall be treated the same as other disabilities caused or contributed to by other medical conditions...." 29 C.F.R. §1604.10(b). Thus, "disparate treatment of pregnancy as a disability would now be susceptible to challenge as violative of Title VII." *Islesboro School Committee v. Califano*, 593 F.2d 424, 430 (1st Cir. 1979). Such claims can also be adjudicated as an unlawful employment practice under federal law. *Berg v. La Crosse Cooler Co.*, 612 F.2d 1041 (7th Cir. 1980).[11]

We therefore conclude that ERISA preempts the Commission's ordinance and deprives the Commission of jurisdiction.[12]

Order reversed.

ORDER

AND Now, this 24th day of July, 1980, the order of the Court of Common Pleas of Lehigh County, dated June 21, 1979, ordering the payment of $799.35 to Alice Peters, is hereby reversed.

---

[11] Even prior to the passage of PDA, Congress, by broadly preempting the states, had delegated to the federal courts the responsibility for developing a federal common law to fill the regulatory vacuum left by ERISA. *Wayne Chem., Inc. v. Columbus Agency Serv. Corp.*, 426 F. Supp. 316 (N.D. Ind. 1977).

[12] The Union has raised other issues in this appeal, but, in view of our holding, we need not address them.