421 A.2d 1107

Leland E. SMITH, Indiv. and as a stockholder of, and derivatively on behalf of Crowder Jr. Company, a Pennsylvania Corporation

v.

CROWDER JR. COMPANY, E. W. Kuhnsman, W. J. Kuhnsman, J. E. Holaska, R. J. Tallman and Carl W. Moran, Appellants.

Superior Court of Pennsylvania.

Argued March 11, 1980.

Filed Sept. 26, 1980.

628

Thomas C. Sadler, Jr., Allentown, for appellants.

Richard T. Muller, Allentown, for appellee.

Before SPAETH, BROSKY and VAN der VOORT, JJ.

SPAETH, Judge:

This appeal arises from an order dismissing, in part, preliminary objections to a complaint in equity.

Appellee, plaintiff below, is a director, officer, and minority shareholder of Class A voting common stock of the Crowder Jr. Company, a Pennsylvania corporation. Appellants, defendants below, are the Crowder Jr. Company and the remaining directors, officers, and shareholders of Crowder's outstanding Class A voting common stock. Appellee's complaint against appellants was filed on August 15, 1978, and is in five counts.

Count I alleges as follows. In February 1975, Crowder, acting through a special meeting of its directors, adopted an Employee Stock Ownership Plan, to be administered through an Employee Stock Ownership Trust. Crowder appointed several of the individual appellants as trustees of the Plan and as administrators of the Trust. At the time of the creation of the Plan and Trust, Crowder's stock structure consisted of 1,954 shares of Class A voting stock (which were owned entirely by the parties), 30,000 outstanding shares of 7% cumulative preferred stock, and 30,000 shares of authorized but unissued 7% non-cumulative preferred stock. On December 21, 1976, Crowder's directors, over appellee's objection, voted to contribute the 30,000 shares of 7% non-cumulative preferred stock to the Trust. The stock was valued by the directors at $270,000, and was combined with a $30,000 cash contribution. On April 25, 1977, the individual appellants, as majority shareholders of the Class A voting stock, amended Crowder's Articles of Incorporation, over appellee's objection, to (a) give the Board of Directors the power to fix by resolution the designations, preferences, qualifications, limitations, restrictions, and special or relative rights of any class or series of stock, and (b) authorize the issuance of 200,000 shares of a new Class B non-voting common stock. The Board subsequently adopted a scheme of rights and preferences for each class and series

of Crowder stock that accorded Crowder's Class A voting stock lowest priority to corporate dividends and distributions of assets. On December 19, 1977, the Board of Directors, over appellee's protest, issued 217 shares of Class B stock, which it valued at $689.00 per share, and contributed them to the Trust. The value given to the stock by the Board grossly understated its real value.

On the basis of these allegations, Count I charges that the Board purposely gave Crowder's Class B stock a low value so that more shares of stock could be issued and contributed to the Trust than was warranted. It further charges that appellants, through the issuance of the Class B and non–cumulative preferred stock, have watered down Crowder's capital structure, and effectively denied appellee any return on his Class A voting stock. In addition, Count I charges that appellants are guilty of self–dealing and waste of corporate assets because 1) they have never authorized a dividend on Crowder's Class A stock, even though Crowder has shown substantial and continuous growth over the last decade; 2) they have caused Crowder to make excessive contributions to the Trust; 3) as full–time employees and officers of Crowder, four of the individual appellants (who together also own a majority of the Class A stock) are in a position to benefit directly from the contributions made by Crowder to the Trust; and 4) the individual appellants enjoy generous salaries, bonuses, pension benefits, and retirement benefits, which, though not excessive by themselves, when coupled with Crowder's failure to declare a dividend on Class A voting stock manifest an "unreasonable, oppressive, arbitrary and discriminatory" corporate policy against appellee's financial interests as minority shareholder of the corporation.

Count II of the complaint, brought by appellee as an individual, alleges that the acts mentioned above constitute a violation by appellants of their fiduciary duty to him and the corporation under 15 P.S. § 1408 (1979–80 Supp.) and the common law.

Count III, brought by appellee as a shareholder on behalf of the corporation, makes the same allegations as Count II. In addition, Count III alleges that the individual appellants are confronted with an irreconcilable conflict of interest in their positions as fiduciaries of the Trust and as officers, directors, and shareholders of Crowder.

Count IV of the complaint, also brought by appellee as a shareholder on behalf of the corporation, alleges:

64. The Defendants, as members of the Board of Directors, officers of the corporation, or counsel thereto, in making grossly excessive contributions of newly–issued and grossly under–valued Crowder Common "B" Stock have violated at least two requirements (see paragraphs 65 and 66 below) imposed on fiduciaries of employee benefit plans by the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. § 1001 et seq., 88 Stat. 829, which requirements are contractually binding on the corporation and its directors.

65. Under ERISA § 404(a)(1)(A), ESOP fiduciaries must operate such a plan for the "*exclusive* benefit" of the participants in the plan. In light of their self–serving and illegal acts, i. e., funding the ESOP in such a way that it operates primarily for their own benefit and only secondarily for the benefit of Crowder or the plan participants, and set forth in more detail in the preceding paragraphs, the Defendants have violated this provision of the statute and the contractual provision of the Plan and Trust binding on them as Directors and trustees.

66. Also, ERISA Sections 404(a)(1)(B) and (C) provide that a plan fiduciary must discharge his duties with care, skill, prudence and diligence under the circumstances then prevailing that a prudent man acting in like capacity and familiar with such matters would use in the conduct of an enterprise of like character and with like aims.

67. The acts of the Defendants as set forth in detail above violate the "prudent man" requirement of the statute and made part of the Crowder Plan and Trust by implication of common law and binding on the Directors

of the Corporation and Trustees or Administrators of the Plan.

68. More specifically, (paragraph 66) the Defendants, in their dual capacities as Plan fiduciaries and directors of Crowder, have violated the prudent man requirement by making grossly excessive contributions of newly–issued common of Crowder to the ESOT, grossly undervaluing these (Class B) shares for their own benefit, and giving the ultimate recipients non–voting, unmarketable equity.

69. In addition to being statutorily mandated, the obligations set forth in paragraphs 65 and 66 are explicit or implicit contractual obligations of Crowder, its directors, the "Plan Administrator" or "Committee" (i. e., the two Kuhnsmans) and the Plan Trustees (i. e., the two Kuhnsmans) under the Plan or Trust.

70. These legally binding obligations are either expressly or impliedly contained in the terms of the Employee Stock Ownership Plan and Trust and are thus contractually binding upon them and the corporation, its directors, and the Plan fiduciaries (Administrator or Committee and Trustees). To the extent that the directors, the "Committee" or the Trustees are not fulfilling their statutorily–prescribed, obligations under the Plan, they are breaching their contractual duties to the participants made on behalf of Crowder and to Crowder itself, thereby illegally subjecting the Plan and the Corporation to unnecessary financial burdens and risks.

Count V, also brought by appellee as a shareholder on behalf of the corporation, alleges that appellants, in causing Crowder to issue Class B stock, caused it to issue fraudulent securities in violation of the Pennsylvania Securities Act, 70 P.S. §§ 1–401 *et seq.* (1979–80 Supp.).

On the basis of these allegations, appellee prayed, *inter alia,* that the court 1) order appellants to declare a reasonable dividend on Crowder's Class A voting stock; 2) enjoin appellants from declaring any dividend on Crowder's Class B and non–cumulative preferred stock; 3) declare null and void the scheme of rights and preferences established by the

Board of Directors in April 1977, as well as Crowder's contributions of non–cumulative preferred and Class B stocks to the Trust; 4) enjoin appellants from issuing any additional non–cumulative preferred or Class B stock before a reasonable dividend is paid on Crowder's Class A voting stock; 5) order appellants to purchase appellee's Class A voting stock at a fair value, to be determined by an independent, court–appointed appraiser; 6) order the individual appellants, as directors of Crowder and trustees of the Plan, to pay over and account to Crowder for all monies, properties, and effects of the corporation that were wasted, misappropriated, or squandered as a result of their wrongful acts; 7) order the individual appellants to pay Crowder damages, including counsel fees, for injuries Crowder has sustained as a result of the allegations in the complaint; and 8) grant appellee reasonable costs incurred in connection with the prosecution of his action, including reasonable attorney's fees.

On September 25, 1978, appellants filed preliminary objections to the complaint alleging, *inter alia*, that the lower court lacked subject–matter jurisdiction to entertain appellee's claims because 1) the federal Employee Retirement Income Security Act, Act of September 2, 1974, P.L. 93–406, 88 Stat. 832, 29 U.S.C. §§ 1001 *et seq.* (ERISA), preempts state regulation of the Trust; 2) appellee failed to join all employee participant–beneficiaries of the Plan and Trust to the action; and 3) appellee failed to exhaust his exclusive statutory remedies. On May 16, 1979, argument on the objections was heard. On October 11, 1979, the lower court entered an order dismissing all objections, except appellants' demurrer to Count V of the complaint. Appellants have appealed, alleging that the lower court erred in holding that it had subject–matter jurisdiction over appellee's complaint.[1]

1. This court has jurisdiction to hear this appeal under the Act of March 5, 1925, P.L. 23, § 1, 12 P.S. § 672, repealed by the Judiciary Act Repealer Act, Act of Apr. 28, 1978, P.L. 202, No. 53, 42 Pa.C.S.A. § 20002(a) [1069] (1979 Pamphlet) (eff. June 27, 1980). *See Goldberg v. Caplan*, 277 Pa.Super. 47, 419 A.2d 653 (1980); *Shaw v. Westinghouse Corp.*, 276 Pa.Super. 220, 419 A.2d 175 (1980); *Lukus v.*

We have recognized elsewhere, *see Lukus v. Westinghouse Electric Corp.,* 276 Pa.Super. 232, 419 A.2d 431 (1980) (en banc), *allocatur refused,* June 1, 1980; *Shaw v. Westinghouse Corp.,* 276 Pa.Super. 220, 419 A.2d 175 (1980); *Goldberg v. Caplan,* 277 Pa.Super. 47, 419 A.2d 653 (1980), that Congress enacted ERISA to afford comprehensive federal protection of the interests of participants in employee benefit plans. Appellee concedes that Crowder's Employee Stock Ownership Plan is an employee benefit plan within 29 U.S.C. § 1002(3) and is subject to federal regulation under 29 U.S.C. § 1003. State regulation of the Plan (and the Trust created in connection with the Plan) is therefore restricted by 29 U.S.C. § 1144, which provides:

> (a) Except as provided in subchapter (b) of this section, the provisions of this subchapter and subchapter III of this chapter shall supersede any and all State laws insofar as they may now or hereafter relate to any employee benefit plan ....
>
> \*  \*  \*  \*  \*  \*
>
> (c) For purposes of this section:
>
> (1) The term "State law" includes all laws, decisions, rules, regulations, or other State action having the effect of law, of any State ....
>
> (2) The term "State" includes a State, and political subdivisions thereof, or any agency or instrumentality of either, which purports to regulate, directly or indirectly, the terms and conditions of employee benefit plans covered by this subchapter.

This preemption must be given effect, for it constitutes an exercise by Congress of its powers under article VI, section 2, of the United States Constitution (the supremacy clause).

*Westinghouse Electric Corp.,* 276 Pa.Super. 232, 419 A.2d 431 (1980). Because we have jurisdiction, on April 14, 1980, we denied appellee's motion to quash the appeal. On the same day we also denied appellants' motion for allowance of an interlocutory appeal on the ground that the motion was mooted by our denial of appellee's motion to quash.

It may be noted that appellee has not attempted to appeal from the lower court's dismissal of Count V of the complaint.

*See generally Lukus v. Westinghouse Electric Corp., supra; Shaw v. Westinghouse Electric Corp., supra; Goldberg v. Caplan, supra.*

■ We agree with appellants that Count IV of appellee's complaint must be dismissed. As noted, that count alleges that appellants violated the duties set forth in 29 U.S.C. §§ 1104(a)(1)(A), (B), and (C) for fiduciaries of employee benefit plans, and that appellants by violating their duties under ERISA, also violated their contractual duties to Crowder, the Plan and the Trust. In *Goldberg v. Caplan, supra,* we held that

> section 1144 preempts entirely all state laws (including state equity actions) purporting to regulate trustees of a pension plan, for there can be no doubt that such laws (and actions) would "relate to" an employee benefit plan within the meaning of section 1144. ERISA comprehensively regulates the duties of trustees, *see* 29 U.S.C. §§ 1101 *et seq.* Were state laws (and actions) regulating trustees not preempted, trustees would be subject to the threat of conflicting and inconsistent regulation by state and federal authorities. It was this very threat that Congress endeavored to eliminate through the passage of section 1144. *See Lukus v. Westinghouse Electric Corp., supra* (collecting authority).

*Goldberg* controls this case. It is immaterial that *Goldberg* involved a petition for the removal of trustees of employee pension plans while this case involves a derivative action against the fiduciaries of an employee stock ownership plan. Nor can appellee avoid the force of section 1144 by claiming that Count IV does not assert a right to relief under ERISA but merely refers to the duties set forth in that Act as a standard for determining the extent to which appellants have breached their duties under state law. Appellee's Brief at 27–28. Count IV constitutes an attempt to invoke state regulation of the responsibilities of fiduciaries of an employee benefit plan, and under section 1144 that attempt must fail. ERISA preempts entirely all state regulation of fiduciaries of employee benefit plans. Count IV would therefore

be maintainable only if ERISA conferred jurisdiction upon the lower court to hear a claim arising under ERISA alleging appellants' breach of the duties set forth in that Act. However, in *Goldberg v. Caplan, supra,* we held that under 29 U.S.C. §§ 1109, 1132(a)(1)(B), 1132(a)(2), and 1132(e)(1), exclusive jurisdiction of an action against the fiduciaries of an employee benefit plan for breach of their duties under ERISA lies in "the district court of the United States." We further noted that our holding comported with the decisions of several federal courts. *See Central States v. Old Sec. Life Ins.,* 600 F.2d 671 (7th Cir. 1979); *Morrissey v. Curran,* 567 F.2d 546, 549 (2d Cir. 1977); *Gilliam v. Edwards,* 492 F.Supp. 1255 (D.N.J.1980); *Wong v. Bacon,* 445 F.Supp. 1177, 1185–86 (N.D.Cal.1977), *see also Marshall v. Chase Manhattan Bank,* 558 F.2d 680 (2nd Cir. 1977). Therefore, Court IV of appellee's complaint must be dismissed.[2]

We agree with appellee, however, that the claims made in Counts I and II of his complaint are not preempted by ERISA.[3] It will be remembered that these counts allege that the individual appellants have recapitalized Crowder in such a way as to benefit themselves to the detriment of appellee and the corporation. Specifically, the counts allege that appellants, as directors, officers, and majority shareholders of Crowder's voting stock, have caused Crowder to retain all corporate earnings for more than a decade, have contributed Class B and non–cumulative preferred stock of Crowder to an employee stock ownership trust under which individual appellants are designated beneficiaries, and have amended Crowder's articles of incorporation and passed resolutions assigning to appellee's Class A voting stock lowest preference to Crowder's dividends and distribution of assets.

2. For the above reasons, so much of Count III as purports to assert appellants' liability for breach of their duties under state law as fiduciaries of the Plan and Trust must be stricken from the complaint. For the reasons stated below, however, the lower court has jurisdiction to hear claims set forth in Count III that the individual appellants are liable to the corporation for waste of corporate assets, self–dealing, and gross negligence in the performance of their duties as corporate directors.

3. As for ERISA's preemption of Count III, *see* footnote 2, *supra.*

Appellants argue that these claims are preempted by ERISA because

> in order to make a determination of the alleged causes of action in [appellee's] Complaint, ... the Court below would have to make an incursion into the following areas which have been absolutely preempted by the federal legislation: —(1) the funding of the [Trust]; (2) the management of the [Plan] .... Further, and significantly, the relief requested, e. g., recission and voiding of the contributions in 1976 and 1977 would be contrary to ERISA purposes.

Appellants' Brief at 21.

As an initial matter, we reject appellants' assertion that in deciding the claims made in the first two counts of the complaint, the lower court would be required to address issues regarding the management of the Plan. As is clear from the face of the complaint, Counts I and II have nothing to do with the management of the Plan. Rather, the counts allege appellants' use of the Plan and Trust as a device to deny appellee participation in Crowder's profits and assets. This claim can be proved regardless of the soundness or unsoundness of the Plan and Trust, or their management and administration.

■ It is true that issues involving the funding of the Trust are raised in Counts I and II. This fact by itself, however, does not preclude the lower court from hearing appellee's claims. Section 1144(a) of ERISA states that the provisions of the Act supersede state laws only "insofar as they ... *relate* to any employee benefit plan." Whether the claims in Counts I and II "relate" to an employee benefit plan depends on whether the claims constitute an attempt to regulate areas governed by the provisions of ERISA, or whether they only indirectly affect the Trust in a way not in conflict with the purposes ERISA is designed to achieve. If the former is true, the claims are preempted by section 1144; but if the latter is true, the claims are not preempted. *See Shaw v. Westinghouse Electric Corp., supra; Lukus v. Westinghouse Electric Corp., supra; Commonwealth ex rel. Mag-*

*rini v. Magrini,* 263 Pa.Super. 366, 398 A.2d 179 (1979); *but
see International Ladies Garment Workers' Union v. Human
Relations Commission,* 53 Pa.Cmwlth. 229, 417 A.2d 1279
(1980) (Three–judge panel).

█ It cannot be successfully contended that Counts I and
II constitute an attempt to invoke state regulation of Crow-
der's Trust and Plan. Appellants' strongest support of such
an attempt is found in appellee's prayer that Crowder's
stock contributions to the Trust be voided. One of the
stated purposes of ERISA is to ensure the financial sound-
ness and stability of employee benefit plans, *see* 29 U.S.C.
§ 1001, and according to appellants, to void the stock contri-
butions would impermissibly conflict with this purpose to
the extent that it impaired the integrity of the Plan's
funding. Yet, it is to be noted that ERISA's funding
provisions (which apply only to employee pension benefit
plans [4]) merely require that a plan establish and maintain a

4. Employee benefit plans, as defined by 29 U.S.C. § 1003, are subdi-
    vided into "employee pension benefit plans" and "employee welfare
    benefit plans." 29 U.S.C. § 1002(2) defines an "employee pension
    benefit plan" as
        any plan, fund, or program which was heretofore or is hereafter
        established or maintained by an employer or by an employee
        organization, or by both, to the extent that by its express terms or
        as a result of surrounding circumstances such plan, fund, or pro-
        gram–
            (A) provides retirement income to employees, or
            (B) results in a deferral of income by employees for periods
        extending to the termination of covered employment or beyond,
        regardless of the method of calculating the contributions made to
        the plan, the method of calculating the benefits under the plan or
        the method of distributing benefits from the plan.
    § 1002(1) defines an "employee welfare benefit plan" as
        any plan, fund or program which was heretofore or is hereafter
        established or maintained by an employer or by an employee
        organization, or by both, to the extent that such plan, fund, or
        program was established or is maintained for the purpose of
        providing for its participants or their beneficiaries, through the
        purchase of insurance or otherwise, (A) medical, surgical, or hospi-
        tal care or benefits, or benefits in the event of sickness, accident,
        disability, death or unemployment, or vacation benefits, appren-
        ticeship or other training programs, or day care centers, scholar-
        ship funds, or prepaid legal services, or (B) any benefit described in
        section 186(c) of this title (other than pensions on retirement or
        death, and insurance to provide such pensions).

funding standard account in accordance with 29 U.S.C. § 1082(b), (c), and avoid an accumulated funding deficiency, as defined by 29 U.S.C. §§ 1082(a), 1085. Specifically, ERISA does not regulate transfers of assets by an employer to a plan. Thus, if we suppose the case of a corporate officer who causes his corporation to convey fraudulently its profits to an employee benefit trust, no provision of ERISA will be violated by the conveyance, even though the officer is a participant in the plan. Moreover, it is uncertain whether the officer will have violated any other federal law by the conveyance. *See generally Burks v. Lasker*, 441 U.S. 471, 99 S.Ct. 1831, 60 L.Ed.2d 404 (1979); *Santa Fe Industries, Inc. v. Green*, 430 U.S. 462, 97 S.Ct. 1292, 51 L.Ed.2d 480 (1977) (corporations are creatures of state law and except where federal law expressly requires certain responsibilities of directors with respect to stockholders state law governs internal affairs of corporation).

ERISA was not intended as a device to permit corporate directors and officers to defraud with impunity corporate shareholders and creditors by funneling the corporation's assets into an employee benefit trust. We are therefore reluctant to accept appellants' contention that Congress meant to abrogate traditional state remedies for the protection of shareholders and creditors against corporate mismanagement and fraud in the absence of federal remedies replacing them.

Recognizing, however, that the preemption in section 1144 of ERISA is broad, and may bar rescission by a state court of an employer's contribution to an employee benefit trust, no matter how illegal or fraudulent the contribution, especially in a case where there are innocent participants in the plan who would be injured by rescission, we do not decide whether the lower court here has the power to void Crow-

Employee welfare benefit plans are specifically excepted by 29 U.S.C. § 1081(a), from ERISA's funding provisions, *see Lukus v. Westinghouse Electric Corp., supra* (slip op. at 13 n. 13); Hutchison & Ifshin, Federal Preemption of State Law Under the Employee Retirement Income Security Act of 1974, 46 Chi.L.Rev. 23, 30 (1978), as are certain kinds of employee pension benefit plans.

der's stock contributions to the Trust. Even if the court lacks this power, we entertain no doubt of the court's power to hold appellants personally liable for any damages they wrongfully caused appellee and Crowder to suffer. While such relief would affect the integrity of appellants' pocketbooks, it would not, we think, affect the integrity of the Plan's funding.

The present case is very similar to *Cornell Mfg. Co., Inc. v. Mushlin*, 70 App.Div.2d 123, 420 N.Y.S.2d 231 (1979). In *Mushlin*, an action was brought in a state court to recover damages from the president and general manager of a corporation for self–dealing and waste of corporate assets. The complaint alleged that the president and his wife, who were the sole trustees of the corporation's pension plan and the only members of its pension committee, caused the corporation to make excessive contributions to the plan. The court found that this claim was not barred by ERISA for it did not affect the plan or the duties of the plan's fiduciaries. Similarly, here appellants have failed to demonstrate how their liability as officers, directors, and shareholders of the corporation for breach of their duties to appellee and Crowder would conflict, or potentially conflict, with the purposes ERISA was designed to achieve.[5]

■■■ From our conclusion that the claims made in Counts I and II of the complaint do not relate to the Plan and Trust,

5.  Appellants contend without merit that the claims made in Counts I and II are preempted because the lower court may have to determine the value of Crowder's stock contributions to the Trust, which determination may be inconsistent "with the acceptance by the Internal Revenue Service of the value of the 1977 and 1976 contribution[s] by the corporation to the [Trust] for tax purposes." Appellants' Brief at 26–27. First, federal tax treatment of employee benefit plans is not delineated in Chapter 18 of Title 29 of the United States Code, and therefore is not affected by the supersedure found in section 1144 of ERISA, which by its terms is limited to the provisions of subchapters I and III of Chapter 18. Second, appellants have failed to show how a determination by the lower court that the value of the stock contributed to the Trust was different from the IRS's appraisal would conflict with the purposes of ERISA. Third, appellants' argument overlooks the fact that even were the lower court compelled to accept the IRS's appraisal, a cause of action against them would still be stated.

it follows that the Plan's beneficiaries were not necessary and indispensable parties to appellee's suit, and their non–joinder did not deprive the lower court of subject–matter jurisdiction. A person is a necessary and indispensable party only when his rights are so connected with the claims of the litigants that no decree can be made without impairing his rights. *E. g., Pocono Pines Corp. v. Pa. Game Com'n.*, 464 Pa. 17, 345 A.2d 709 (1975); *Powell v. Shepard*, 381 Pa. 405, 113 A.2d 261 (1955); *Shaw v. Westinghouse Electric Corp., supra.* It is clear, for the reasons stated, that the lower court may grant relief without impairing the rights of the Plan beneficiaries.

■ We also reject appellants' contention that the lower court lacks jurisdiction of Counts I and II of the complaint because of the existence of an exclusive statutory remedy under the Business Corporation Law, 15 P.S. §§ 1001 *et seq.*, for the appraisal for appellee's stock.

The principles used to determine whether a court possesses subject–matter jurisdiction over a cause of action are settled:

In *Zerbe Township School District v. Thomas*, 353 Pa. 162, 44 A.2d 566, we stated principles which are here applicable, namely that even though a plaintiff have no standing to bring his action, even though his complaint be demurrable, even though he fail to establish its allegations, even though the court should finally conclude that the relief he seeks should not be granted, not any or all of these circumstances would enter into, much less determine, the question whether the court had jurisdiction of the litigation. We there pointed out that the test of jurisdiction was the competency of the court to determine controversies of *the general class* to which the case presented for its consideration belonged,–whether the court had power to *enter upon the inquiry*, not whether it might ultimately decide that it was unable to grant the relief sought *in the particular case*; that the Act of 1925 was not intended to furnish a short cut to a determination of the issues of law or fact raised by the pleadings and that it was not

concerned with matters going to the right of the plaintiff to *recover* on his cause of action but only with his right to have his cause of action *heard and determined.*

*In re Jones & Laughlin Steel Corp.,* 263 Pa.Super. 378, 387, 398 A.2d 186, 190 (1979), *aff'd,* 488 Pa. 524, 412 A.2d 1099 (filed March 20, 1980), *quoting Witney v. Lebanon City,* 369 Pa. 308, 311–12, 85 A.2d 106, 108 (1952).

*See also Sperry & Hutchinson Co. v. O'Connor,* 448 Pa. 340, 412 A.2d 539 (1980). Here, appellants do not contend that the Business Corporation Law provides exclusive statutory remedies for appellee's charges of self–dealing, waste of corporate assets, and breach of fiduciary duty, or otherwise ousts the lower court's equity jurisdiction to hear the charges. Nor could they so contend, for the Business Corporation Law specifically preserves the jurisdiction of a court in equity to supervise and control corporations. *See* 15 P.S. § 1006(D) (1979–80 Supp.); 17 P.S. § 281(V) (1962), *repealed by* the Judiciary Act Repealer Act, 42 Pa.C.S.A. § 20002(a)[152] (1979 Pamphlet) (current provision at 42 Pa.C.S.A. § 931 (1979 Pamphlet)). Appellants' attack on the lower court's power to order appraisal of appellee's stock, one of the several prayers for relief against appellants contained in appellee's complaint, merely questions the lower court's power to grant a particular kind of relief should appellee ultimately prove his case. While appellants may or may not be correct that the lower court lacks this power, their assertion does not implicate the jurisdiction of the lower court over appellee's causes of action. *Compare Goldman v. McShain,* 432 Pa. 61, 247 A.2d 455 (1968); *Ridge Radio Corp. v. Glosser,* 417 Pa. 450, 208 A.2d 839 (1965); *Hunter v. Port Authority of Allegheny County,* 277 Pa.Super. 4, 419 A.2d 631 (1980) (determination that adequate remedy does or does not exist does not entail a question of subject–matter jurisdiction). *See also Shaw v. Westinghouse Electric Corp., supra* (slip op. at 4 n. 3) (cause of action is different from the relief sought on the cause). Because appellants' argument regarding the lower court's power to order appraisal of appellee's shares does not implicate the

lower court's subject–matter jurisdiction, we cannot reach the argument on this appeal. *E. g., Strank v. Mercy Hospital of Johnstown*, 376 Pa. 305, 102 A.2d 170 (1954) (appeal from pre–trial order sustaining court's subject–matter jurisdiction is limited to that issue).

The order of the lower court is affirmed in part and reversed in part, consistent with this opinion.