CORNELL MANUFACTURING COMPANY, INC., Respondent, v SIDNEY B. MUSHLIN et al., Appellants.

Second Department, September 10, 1979

### APPEARANCES OF COUNSEL

*Cleary, Gottlieb, Steen & Hamilton (Edwin B. Mishkin* of counsel), for Sidney B. Mushlin and another, appellants.

*Seward & Kissel (Daniel P. Fitzgerald* and *Darya Aberback* of counsel), for Bank of America National Trust & Savings Association, appellant.

*Squadron, Ellenoff, Plesent & Lehrer (Neal M. Goldman* and *Judith R. Cohen* of counsel), for respondent.

### OPINION OF THE COURT

MOLLEN, P. J.

In an action to recover damages for self-dealing and waste of corporate assets, (1) the defendants Sidney and Muriel Mushlin appeal from so much of an order as denied their motion to dismiss the amended complaint insofar as it relates to their "management of and/or receipt of benefits under," the Cornell Manufacturing Company, Inc., Employees Pension Trust and (2) the defendant Bank of America National Trust & Savings Association, Trustee of the Cornell Manufacturing Company, Inc., Employees Pension Trust appeals from so much of the same order as denied its cross motion to dismiss the amended complaint insofar as it joins the Bank as a party to the action.

This appeal concerns the scope of the Federal Employee Retirement Income Security Act of 1974 (ERISA) (US Code, tit 29, § 1001 *et seq.)* and presents the question of whether, in the circumstances of this case, it pre-empts an otherwise valid State cause of action for misconduct brought against a corporate officer who, at the time of the alleged wrongdoing, was also the sole trustee of the corporation's pension plan.

Beginning in 1941 and continuing for over 27 years, the assets and business of the plaintiff Cornell Manufacturing Company, Inc., (Cornell), were wholly owned by defendants Sidney B. Mushlin and Muriel A. Mushlin. In 1959 they established an employees pension plan which was funded

solely by the company. The Mushlins and other eligible persons participated in the plan, and Sidney Mushlin was its sole trustee. He and his wife, Muriel, served as the only members of the pension committee.

In or about February, 1969, the Mushlins sold the enterprise to National Screw & Manufacturing Company now a division of Monogram Industries, Inc. Sidney Mushlin was asked to stay on as president and general manager of Cornell, and he signed an employment agreement to that effect. He also continued as sole trustee of the pension plan and, with his wife, remained a member of the pension committee. In August, 1974, Mrs. Mushlin, who was still in Cornell's employ, joined her husband as cotrustee of the pension plan.

Two years later, in August, 1976, the Mushlins were removed as trustees of the plan and their employment by Cornell was terminated. In February of the following year Cornell commenced this lawsuit against the Mushlins claiming that they had wasted corporate assets by, among other things, causing excessive payments to be made into the pension plan over which they had exclusive control.

As set forth in plaintiff's amended complaint, the specific allegations of wrongdoing were as follows:

"8. During the period March 15, 1969 through July 31, 1976, MUSHLIN caused CORNELL to pay to MURIEL sums of money aggregating approximately $49,219.04 exclusive of payroll related expenses and to make contributions to the Cornell Manufacturing Co., Inc. Employees Pension Trust ('the Pension Plan') for Muriel's account in sums approximating $60,000.00.

\* \* \*

"15. MUSHLIN violated his fiduciary duty to CORNELL by wrongfully computing his cash compensation to be used as the basis for computing his monthly benefit, and by reporting to the Pension Plan administrator earnings for the year 1965 of $100,000. In so doing, he wrongfully failed to report his average earnings for the years 1960-1965 and he wrongfully included bonuses which are to be excluded by the terms of the Pension Plan from the computation of earnings. In addition, MUSHLIN, aided and abetted by MURIEL, forbade the administrator of the Pension Plan from using the lower current annuity purchase costs in computing the actuarial liability of the Pension Plan, but insisted on the use of the higher costs,

resulting in contributions by CORNELL to the Pension Plan far in excess of those required to fund the Pension Plan.

"16. In December, 1975, MUSHLIN and MURIEL, as the sole members of the pension committee, wrongfully permitted MUSHLIN to take his pension benefits in a lump sum. On the basis of the improper earnings calculation and the inflated annuity costs described in paragraph 15 hereof, defendants caused the Pension Plan to pay MUSHLIN the sum of $520,566.00 plus interest of $6,940.88 in a lump sum payment instead of the monthly pension to which MUSHLIN was entitled.

\* \* \*

"18. Between February 1, 1969 and July 31, 1976, in violation of his agreement and duty to devote his full time and attention to CORNELL's affairs and to render business services solely and exclusively for CORNELL, MUSHLIN, aided and abetted by MURIEL, engaged in a separate business entity known as 'Argo Advertising Agent'/'Argo Agency, Inc.' During said period, among other things, defendants wrongfully caused CORNELL to designate such entity to receive commissions from media in which CORNELL placed advertising, the benefit of which properly belonged to CORNELL.

"19. During the period from January 1, 1974 through July 31, 1976, defendants wrongfully converted substantial sums of money, believed to be in excess of $9,765.00, from CORNELL by causing CORNELL to pay defendants' personal non-business related expenses for personal purchases and by causing CORNELL to pay MUSHLIN petty cash for which he submitted no justification.

"20. As alleged in paragraph 8 above, during the period from February 1, 1969 through July 31, 1976, defendants caused CORNELL to pay MURIEL monies aggregating $79,219.04 for services allegedly rendered on a continuing basis despite the fact that MURIEL was rarely and sporadically present for work, and, when she did appear for work, the services she performed were of little or no value. In addition, defendants caused CORNELL to pay payroll taxes and to make contributions to the Pension Plan in excess of $60,000.00 to which MURIEL was not entitled."

Initially, the Mushlins moved to dismiss the original complaint insofar as it related to the pension plan. In the alternative, they sought to have the plan itself joined as a party

plaintiff. Special Term denied that branch of the motion which sought to dismiss part of the complaint, without prejudice to renew. However, the alternative request for joinder was granted and it was ordered that the pension plan be joined either as a party plaintiff or, if it refused to be so joined, as a party defendant. The plan's recently appointed trustee, the Bank of America National Trust & Savings Association (the Bank), declined to participate as a party plaintiff, and consequently an amended complaint, naming the Bank as a party defendant, was drawn and served.

Thereafter, the Mushlins renewed their motion to dismiss the amended complaint "insofar as it relates to the * * * ('Pension Plan') and defendant * * * management of and/or receipt of benefits under the Pension Plan," on the ground that ERISA pre-empts any State cause of action with respect thereto. The Bank cross-moved for dismissal of the amended complaint insofar as it named the Bank as a party to the action. Special Term denied both the motion and the cross motion, and these appeals followed.

■ We turn first to the Mushlins' contention that the portion of the plaintiff's claim pertaining to alleged excessive payments to the pension plan is pre-empted by ERISA and must be dismissed on the ground that such claim is "related" to the plan.

ERISA was enacted to prevent the loss of anticipated retirement benefits by providing adequate safeguards to assure the equitable character and financial soundness of employee benefit plans (see US Code, tit 29, § 1001, subds [b], [c]). The broad purpose of the act was "to assure American workers that they may look forward, with anticipation, to a retirement with financial security and dignity, and without fear that this period of life will be lacking in the necessities to sustain them as human beings within our society" (US Code Cong & Admin News, 1974, vol 3, p 4646).

To assure uniformity in the application of the minimum standards of conduct established by the act, Congress felt it necessary to eliminate the threat posed by conflicting or inconsistent State or local regulation of employee benefit plans.[1] Accordingly, a supersedure section was added provid-

---

1. When introducing the conference agreement before the Senate, Senator Harrison Williams, Jr., Chairman of the Senate Committee on Labor and Public Welfare, remarked: "It should be stressed that with the narrow exceptions specified in the bill, the substantive and enforcement provisions of the conference substitute are intended

ing in pertinent part that: "the provisions of this subchapter and subchapter III of the chapter shall supersede any and all State laws insofar as they may now or hereafter relate to any employee benefit plan" (US Code, tit 29, § 1144, subd [a]).

The gravamen of the Mushlins' argument on this appeal is that this provision pre-empts the plaintiff's cause of action insofar as it relates to the pension plan. We disagree.

The question of the precise boundaries of ERISA's pre-emption is by no means free of doubt and has given rise to substantial litigation. The clearest cases involve State laws which operate directly upon employee benefit plans. Thus, a State statute imposing a tax upon benefits paid under a plan is plainly pre-empted by ERISA (see *National Carriers' Conference Committee v Heffernan,* 454 F Supp 914). The more difficult cases involve statutes which bear only indirectly upon employee benefit plans (see, e.g., *Wadsworth v Whaland,* 562 F2d 70, cert den 435 US 980 [involving a State law which broadly regulated the content of group insurance policies]).[2]

It has never been suggested, however, that a State statute or cause of action is absolutely pre-empted by ERISA simply because it in some way tangentially involves an employee benefit plan. In *Stone v Stone* (450 F Supp 919), for example, it was held that ERISA would not pre-empt a former wife's claim to a portion of her ex-husband's pension benefits under the community property provision of her California divorce decree. Moreover, ERISA has been held not to pre-empt the operation of fair employment laws which require employee

to preempt the field for Federal regulations, thus eliminating the threat of conflicting or inconsistent State and local regulation of employee benefit plans. This principle is intended to apply in its broadest sense to all actions of State or local governments, or any instrumentality thereof, which have the force or effect of law" (120 Cong Rec 29933).

Representative John Dent, Chairman of the Subcommittee on Labor of the House Committee on Labor and Education, expressed a similar view in submitting the conference report to the House: "Finally, I wish to make note of what is to many the crowning achievement of this legislation, the reservation to Federal authority the sole power to regulate the field of employee benefit plans. With the preemption of the field, we round out the protection afforded participants by eliminating the threat of conflicting and inconsistent State and local regulation" (120 Cong Rec 29197).

2. In *Wadsworth v Whaland* (562 F2d 70, *supra)* the court held that the law in question would ordinarily be subject to ERISA pre-emption to the extent that it regulated the content of group policies purchased by employee benefit plans. Pre-emption was not required, however, because of the act's saving clause (US Code, tit 29, § 1144, subd [b], par [2]), cl [A]) which reaffirmed the authority of the States to regulate insurance.

medical or disability plans to pay benefits to women unable to work because of pregnancy (see, e.g., *Matter of Westinghouse Elec. Corp. v State Human Rights Appeal Bd.,* 60 AD2d 943; *Gast v Oregon,* 36 Ore App 441; *Time Ins. Co. v Department of Ind., Labor & Human Relations,* 46 USLW 2369). And, indeed, this court has only recently held that ERISA does not exempt a debtor's pension plan benefits from the operation of New York's statutory procedures governing enforcement of money judgments *(National Bank of North Amer. v International Brotherhood of Elec. Workers Local No. 3 Pension & Vacation Funds,* 69 AD2d 679).

In *McNeil v Suffolk County Painters Ins. Welfare, Vacation & Welfare Supplemental Funds* (431 F Supp 387), a pension fund administrator, alleging that his salary and benefits had been improperly reduced, brought an action in Supreme Court, Suffolk County, to compel arbitration. The trustees of the fund removed the case to Federal court claiming that the State action was pre-empted by ERISA and that exclusive jurisdiction lay in the Federal District Court. In granting the administrator's motion to remand the action to the State court the court wrote (p 289): "The action was in fact brought to enforce the arbitration clause of an employment contract between the trustees and the fund's administrator, who is assumed for purposes of this motion to be a 'fiduciary' under ERISA. Clearly, however, the action is not brought under the provisions of the plan, it seeks to enforce no rights under the plan, nor does it relate to future benefits under the plan. Consequently, the action is not one brought 'under the sub-chapter', *i.e.,* under ERISA, and does not lie within the 'exclusive jurisdiction' of the district court, 29 U.S.C. § 1132(e) (1)."

Similarly, under the circumstances at bar, we hold that plaintiff's cause of action is not so related to the pension plan as to require pre-emption under the provisions of ERISA.

The complaint in this case alleges that, acting as corporate officials, the Mushlins wrongfully wasted the assets of the plaintiff corporation. It is beyond dispute that a corporation may seek redress against any officer or director who breaches his duty of undivided and unqualified loyalty to the corporation's interests (see *Foley v D'Agostino,* 21 AD2d 60, 66-67). The Mushlins do not deny that such misconduct gives rise to a valid State cause of action under section 720 of the Business

Corporation Law.[3] Indeed, they offer no challenge to that part of the complaint which alleges acts of misconduct entirely unconnected to the pension plan (see pars 18 and 19 of the complaint quoted *ante*).

In our view, the involvement of the pension plan in the fraudulent scheme alleged here was at most incidental. If plaintiff's allegations are true, the Mushlins wrongfully depleted corporate assets by causing excessive payments to be made into the pension plan which they controlled and from which they then received inordinate benefits. In essence, the pension plan was nothing more than the instrumentality by which the Mushlins accomplished the alleged misappropriation of plaintiff's funds. We do not believe that ERISA was meant to shield such misconduct from State law especially where, as here, no interest protected by the act is involved. Plaintiff has not brought suit against the Mushlins as former pension plan trustees. Instead, plaintiff is attempting only to enforce rights arising from Mr. Mushlin's duty as director and officer of the corporation.

Significantly, were the pre-emption argument to prevail, plaintiff would be without an adequate remedy as against the Mushlins since it would lack standing to sue under the provisions of the act (see US Code, tit 29, § 1132, subd [a]; cf. *Stone v Stone,* 450 F Supp 919, 933, *supra*).

Our reading of the cases in the area suggests four factors that appear to influence the determination of the pre-emption issue: (1) the extent to which the law in question relates to an area traditionally within the State's domain (see *Stone v Stone, supra,* p 932); (2) the extent to which the purpose or effect of the law impinges upon employee benefit plans (see *National Carriers' Conference Committee v Heffernan,* 454 F Supp 914, *supra);* (3) the extent to which the relief sought or procedures employed are incompatible with those of ERISA (see *Azzaro v Harnett,* 414 F Supp 473, affd 553 F2d 93, cert

---

3. That section provides:

"(a) An action may be brought against one or more directors or officers of a corporation to procure a judgment for the following relief:

"(1) To compel the defendant to account for his official conduct in the following cases:

"(A) The neglect of, or failure to peform, or other violation of his duties in the management and disposition of corporate assets committed to his charge.

"(B) The acquisition by himself, transfer to others, loss or waste of corporate assets due to any neglect of, or failure to perform, or other violation of his duties."

den 434 US 824); and (4) the extent to which the rights sought to be enforced by the aggrieved party actually arise under an employee benefit plan (see *McNeil v Suffolk County Painters Ins. Welfare, Vacation & Welfare Supplemental Funds,* 431 F Supp 387, 389, *supra).* In the case at bar, plaintiff seeks no relief which is incompatible with the aims of ERISA, nor which impinges upon the employee benefit plan. The claim here does not arise under the provisions of an ERISA plan, and a suit to hold corporate officials responsible for misconduct has' long been within the domain of our State courts.

The purposes of section 720 of the Business Corporation Law, under which plaintiff's suit is brought, are wholly unrelated to the purposes of ERISA. The former serves the essential function of providing redress to corporations whose assets have been wrongfully wasted by its officers and directors. In permitting the plaintiff access to our courts to seek such redress under the circumstances at bar, we trespass against no interest protected by ERISA (cf. *National Bank of North Amer. v International Brotherhood of Elec. Workers Local No. 3 Pension & Vacation Funds,* 69 AD2d 679, *supra).*

The Mushlins contend that paragraph 16 of the complaint, alleging an improper lump-sum pension payment, is clearly beyond State court review. Plaintiff does not dispute this and has specifically disclaimed any interest in recouping for the plan the alleged improper payment. We agree that ERISA pre-empts any cause of action relating to that payment, and accordingly paragraph 16 must be stricken from the complaint. In all other respects, however, we hold that the Mushlins' motion to dismiss was properly denied.

Turning next to the issue of joinder, we hold that the defendant Bank's cross motion to dismiss the amended complaint insofar as it joins the Bank as a party should have been granted.

The compelled joinder of the Bank would be proper only if complete relief could not otherwise be accorded to the parties, or if the Bank might be inequitably affected by a judgment in the case (see CPLR 1001, subd [a]). The issues to be resolved here, however, are limited to whether the Mushlins breached a duty owed to the plaintiff and whether they wasted the plaintiff's corporate assets. The Bank, as trustee of the pension plan, has no involvement in those issues.

Moreover, the interests of the Bank would not be directly affected in any way by the outcome of plaintiff's suit against

the Mushlins (cf. *Kulchin v Spear Box Co., Inc. Retirement Plan,* 451 F Supp 306). Nor could any finding made in this suit work a collateral estoppel against the Bank's later assertion of an ERISA claim. As trustee of the pension plan the Bank is precluded from bringing any claim against the Mushlins in State court (see US Code, tit 29, § 1132, subd [e], par [1]). Since it can obtain no relief herein, the Bank cannot be expected to contest the issues; therefore, its participation could not be characterized as a "full and fair opportunity" to litigate in the initial forum. In the absence of such opportunity, the doctrine of collateral estoppel may not be invoked (cf. *Schwartz v Public Administrator of County of Bronx,* 24 NY2d 65).

Accordingly, the Bank is not a necessary party to the action and should not have been joined. Its cross motion to dismiss the amended complaint as against it should have been granted (see CPLR 1003).

We note that the briefs in this case point out that after entry of the order appealed from, Muriel Mushlin filed an answer which included a cross claim against the Bank for pension benefits. This matter is *dehors* the record and reference to it was improper (see *American Ind. Contr. Co. v Travelers Ind. Co.,* 54 AD2d 679). Our dismissal of the complaint as to the Bank does not affect its status as a party for purposes of contesting the cross claim.

In sum, Special Term's order should be modified so as to grant the Mushlins' motion to the extent of dismissing paragraph 16 of the amended complaint and the Bank's cross motion to dismiss the amended complaint as to it.

O'CONNOR, RABIN and GULOTTA, JJ., concur.

Order, modified, on the law, by (1) adding to the first decretal paragraph thereof after the word "denied" the following: "except the motion is granted only as to paragraph 16 of the amended complaint", (2) deleting from the second decretal paragraph thereof the word "denied" and substituting therefor the word "granted", and (3) deleting from the third decretal paragraph thereof the provision requiring the Bank of America National Trust & Savings Association to serve and file an answer to the amended complaint. As so modified, order affirmed, without costs or disbursements.