No. 57,601

WILLIAM EARL GOBEN, *Appellee*, v. BERNARD L. BARRY and UNITED PETROLEUM, INC., *Appellants.*

(703 P.2d 1378)

Opinion filed July 26, 1985.

*J. Michael Morris*, of Sargent, Klenda, Haag & Mitchell, of Wichita, argued the cause, and *Gary M. Austerman*, of the same firm, was with him on the brief for appellants.

*Craig Shultz*, of Shultz & Webb Chartered, of Wichita, argued the cause and *Dennis Webb*, of the same firm, and *Stan Spurrier*, of Fisher & Monnat, of Wichita, were with him on the brief for appellee.

The opinion of the court was delivered by

HOLMES, J.: This is an appeal by Bernard L. Barry from further proceedings following remand after our decision in *Goben v. Barry*, 234 Kan. 721, 676 P.2d 90 (1984) (hereafter *Goben I*). The underlying facts are set forth in detail in *Goben I* and will not be repeated here.

Suffice it to say, we found in *Goben I* that Goben and Barry had entered into a joint venture for the purpose of dealing in the acquisition and development of oil and gas properties. We further found that Barry had breached his fiduciary duty to his fellow co-adventurer by ousting him from the business and refusing to account for his interest therein. We stated:

"We conclude Goben is entitled to a judgment for one-half the assets and net profits of the joint venture from the beginning. The joint venture assets include all the corporate assets of United Petroleum, Inc. We also conclude Goben is

entitled to prejudgment interest on his share of the joint venture distributions to Barry and his family. The judgment shall constitute a lien on the shares of common stock and assets of United Petroleum, Inc. The division of the corporate assets shall be accomplished by a dissolution of United Petroleum, Inc., pursuant to K.S.A. 17-6804(d).

"We affirm the trial court's finding of a joint venture and the award of punitive damages. We modify the award of compensatory damages to include one-half the joint venture net profits from the beginning thereof and one-half the joint venture assets, and remand this case to the district court with directions to dissolve United Petroleum, Inc., and divide its assets equally between Goben and Barry. The district court is further directed to determine the net profit of the joint venture from its beginning and the amount of prejudgment interest on one-half of all distributions made by United Petroleum, Inc., or the joint venture to Bernard Barry, his wife and son in excess of the distributions made to William Goben, except Marilyn J. Barry shall be allowed a reasonable wage for her services to the joint venture. The district court is further directed to enter judgment in favor of William Goben against Bernard Barry and United Petroleum, Inc., in accordance with the views herein expressed." *Goben I*, 234 Kan. at 730-31.

This appeal grows out of the procedural gymnastics resulting from Goben's attempt to enforce our mandate and Barry's equally diligent efforts to avoid it.

Our mandate to the lower court was filed February 24, 1984. On March 8, 1984, the district court filed a journal entry of partial judgment consistent with our directions in *Goben I*, that is, judgment for plaintiff for one-half of the assets and net profits of United Petroleum, Inc. (UPI); prejudgment interest on plaintiff's share of the distributions to Barry and his family in excess of those made to plaintiff; and dissolution of UPI pursuant to K.S.A. 17-6804(d). Additionally, the trial court made certain findings and orders to effectuate our directions in *Goben I*. First, it entered a money judgment for plaintiff as follows:

"The distributions from the joint venture to defendant Bernard Barry and his family in the form of wages, salary, bonuses and pensions, through the fiscal year ending February 29, 1984, excluding consulting fees and less a reasonable wage for the services of Marilyn Barry total:

| | |
|---|---|
| Bernard Barry | $243,635 |
| Marilyn Barry | 62,500 |
| Kevin Barry | 115,675 |
| Pension | 90,875 |

"Plaintiff, William Goben, was entitled to the same distribution; less prior distributions to him in the amount of twenty-six thousand three hundred twenty dollars ($26,320.00) and is entitled to and hereby granted partial judgment against the defendants Bernard Barry and United Petroleum, Inc. in the amount of six hundred forty eight thousand two hundred eighty one dollars and one cent ($648,281.01)."

The trial court noted additional distributions from UPI to Barry and required further hearings to determine whether they also should be made part of the judgment for plaintiff. Finally, the judge appointed a receiver for UPI, who was to carry out the mandate of this court directing dissolution of UPI.

In attempting to collect on the partial judgment rendered by the court Goben instituted garnishment proceedings against all UPI funds on deposit with the Fourth National Bank & Trust Company of Wichita. Answers filed by the bank disclosed various accounts and certificates of deposit. Six of the certificates of deposit, totaling $134,720.75, were held in employee benefit plans designated UPI "Money Purchase Retirement" and UPI "Profit Sharing Plan." Barry unsuccessfully contested the garnishment of the funds represented by the six certificates and this appeal followed.

The retirement and profit sharing plans were initially established February 28, 1980, effective retroactively as of March 1, 1979. The action in *Goben I* was filed December 21, 1978. The plans were set up primarily for the benefit of the Barry family members. The plans were set up as trusts with separate legal entities, were promulgated under federal law, were approved by the Internal Revenue Service and were subject to the Employee Retirement Income Security Act of 1974 (ERISA), 29 U.S.C. § 1001 *et seq.* (1982). On February 8, 1984, subsequent to this court's opinion of January 13, 1984, in *Goben I*, Bernard L. Barry and Marilyn J. Barry as directors of UPI adopted on behalf of the corporation resolutions affecting both the retirement and profit sharing plans and their respective trusts. These resolutions purported to: (1) terminate the plans; (2) fully vest the participants in the plans; (3) amend the plans to provide that notwithstanding termination, the respective trusts established for the plans were to continue until benefits had been paid to the participants upon the earliest of death, disability or attainment of normal retirement age; and (4) replace Bernard L. Barry, original trustee of the trusts, with Marilyn J. Barry, his wife.

For purposes of this appeal, the critical question is whether funds placed in an employee benefit plan allegedly controlled by ERISA may be subject to garnishment by a judgment creditor. The trial court in its journal entry, after finding it had jurisdiction, stated:

"2. The decision by Mr. Barry to create a pension and trust fund which would inure to the benefit of himself and his family was done in further violation of his fiduciary obligation to Mr. Goben, because he had the obligation to consult with Mr. Goben on all matters pertinent to that corporation of materiality until such time as the accounting and termination. He didn't do it. And in so placing those funds without such consultation with Mr. Goben, as I indicated, was a further violation of his fiduciary obligation and fraudulent in nature. I think I do have jurisdiction over the entirety of the funds in the pension plan and in the profit sharing plan. Apparently that decision will be put to issue. The establishment of the pension plan and the profit sharing plan was not authorized and was in violation of the fiduciary obligations that Mr. Barry had to Mr. Goben, and are not valid. The attempt to place those funds in these trusts was ineffective."

Thus, the court found as a matter of fact and law that the initial establishment of the plans was a violation of fiduciary duty. The court went on to hold that the funds were subject to garnishment and should be paid to the receiver, subject to certain conditions pending appeal which are not relevant here. In making his conclusions the court relied upon the "trust pursuit rule" as espoused by the attorney for the receiver and as set forth in 76 Am. Jur. 2d, Trusts § 251, wherein it is stated:

"It is a fundamental rule having great practical application, particularly in all those fields of law involving fiduciary relationships, that equity will pursue property that is wrongfully converted by a fiduciary, or otherwise compel restitution to the beneficiary. The rule is actually one of trusts, since the wrongful conversion gives rise to a constructive trust which pursues the property, its product, or proceeds, in accordance with the rule. Hence, the rule well may be called 'the trust pursuit rule' or 'the rule of trust pursuit.' Under the rule, a trust will follow property through all changes in its state and form, so long as such property, its product, or its proceeds are capable of identification. It will follow the property into the hands of a transferee other than a bona fide purchaser for value, or restitution will be enforced, at the election of a beneficiary, through recourse against the trustee or the transferee personally, or through compelling the transferee to perform the trust, except insofar as the transferee is protected as a bona fide purchaser for value."

Defendants' first issue on appeal is that when the trial court entered a money judgment following remand of *Goben I*, the plaintiff had somehow made an election of remedies which bars his attempt to satisfy that judgment by garnishment of the pension and profit-sharing funds. As pointed out by plaintiff, and as admitted by the defendants, this issue was never presented to the trial court and as we have held many times, "a point not raised before the trial court may not be raised for the first time on

appeal." *Lostutter v. Estate of Larkin,* 235 Kan. 154, Syl. ¶ 6, 679 P.2d 181 (1984). Without going into detail, even if the issue was properly before the court, it lacks merit.

Defendants' second claim is that ERISA, 29 U.S.C. § 1001 *et seq.* (1982), preempts state law, therefore preventing application of the trust pursuit rule, and precludes garnishment of the retirement and profit sharing funds. ERISA was enacted by Congress to protect the interests of participants and beneficiaries of qualified employee benefit plans by improving "the equitable character and the soundness of such plans." 29 U.S.C. § 1001(c) (1982). The Act was intended to make basic reforms, require certain disclosure and reporting procedures, and establish standards of conduct, responsibility and obligations in the area of employee pensions and other employee benefit programs.

The preemption provisions of ERISA are contained in 29 U.S.C. § 1144(a) (1982), which reads:

"Except as provided in subsection (b) of this section, the provisions of this subchapter . . . shall supersede any and all State laws insofar as they may now or hereafter relate to any employee benefit plan described in section 1003(a) of this title and not exempt under section 1003(b) of this title."

Sec. 1144(b) provides for certain exceptions not applicable to this case. ERISA coverage extends to any "employee benefit plan" established or maintained by any employer, employee organization or organizations representing employees engaged in commerce or any industry or activity affecting commerce. 29 U.S.C. § 1003(a) (1982). "Employee benefit plan" is defined in 29 U.S.C. § 1002(3) (1982), and unquestionably includes plans of the type created by UPI in 1980.

The ERISA preemption provision has been considered frequently by courts of both state and federal jurisdictions when faced with state laws or causes of action impacting on covered benefit plans. See cases annotated in 29 U.S.C.A. § 1144 (1985 Supp.). Numerous cases support the proposition that the funds of these plans are not subject to attachment or garnishment by a judgment creditor because of the preemption of state law by ERISA. However, it appears that a majority of courts which have considered the issue have found that the ERISA preemption is not absolute but must, in the words of the statute, directly "relate to any employee benefit plan." Preemption under the statute has been found not to apply in a number of situations: *American Tel.*

& *Tel. Co. v. Merry,* 592 F.2d 118 (2d Cir. 1979), no preemption of a state court garnishment to enforce an alimony and child support order of a state court; *Cody v. Riecker,* 594 F.2d 314 (2d Cir. 1979), garnishment to enforce wife and child support obligations; *Deiches v. Carpenters' Health & Welf. Fund of Phila.,* 572 F. Supp. 766 (D.N.J. 1983), voidable preference under a state insolvency statute; *Stone v. Stone,* 450 F. Supp. 919 (N.D. Cal. 1978), award under community property laws of a portion of a husband's pension benefits to his wife in a divorce action; *Gast v. State of Oregon,* 36 Or. App. 441, 585 P.2d 12 (1978), no preemption of state law prohibiting sex discrimination with regard to receipt of fringe benefits. In *Provience v. Valley Clerks Trust Fund,* 509 F. Supp. 388 (E.D. Cal. 1981), the court stated:

"[I]t now seems settled that where the state law has only an indirect effect on the plan and where it is one of general application which pertains to an area of important state concern, the court should find there has been no preemption." 509 F. Supp. at 391.

The Supreme Court has recognized that ERISA is not all encompassing and that while state law or action may affect an employee benefit plan it may not necessarily relate to it. In *Alessi v. Raybestos-Manhattan, Inc.,* 451 U.S. 504, 525, 68 L. Ed. 2d 402, 101 S. Ct. 1895 (1981), although the court found preemption under the facts of that case, it stated, "We need not determine the outer bounds of ERISA's pre-emptive language," obviously recognizing that there are limits to preemption under the statute. Again, in *Shaw v. Delta Air Lines, Inc.,* 463 U.S. 85, 77 L.Ed. 2d 490, 103 S.Ct. 2890 (1983), the court stated:

"Some state actions may affect employee benefit plans in too tenuous, remote, or peripheral a manner to warrant a finding that the law 'relates to' the plan. [Citation omitted.] The present litigation plainly does not present a borderline question, and we express no views about where it would be appropriate to draw the line." 463 U.S. at 100, n. 21.

We think that when an employee benefit plan is established in violation of a fiduciary duty under state law at a time when the assets placed in the plan are the subject of court action based upon that breach of duty, the "outer bounds of ERISA's pre-emptive language" or the borderline referred to in *Shaw* has surely been crossed.

It is true, as pointed out by appellants, there are a number of cases which find that ERISA precludes garnishment under state

laws. However, none of the cases cited in the briefs, and we have found none, involved outright fraud or breach of fiduciary duty *in the creation of the plan itself.* Generally, in making a pre-emptive determination a court should examine those concerns emphasized by Congress in enacting the federal legislation. *Chevron U.S.A., Inc. v. Hammond,* 726 F.2d 483 (9th Cir. 1984). Where state enforcement activity does not impair the federal regulatory interests, concurrent enforcement activity is authorized. *Gonzales v. City of Peoria,* 722 F.2d 468 (9th Cir. 1983). State law should be preempted only to the extent necessary to protect achievement of the purposes of the federal act in question. Defendant in this case has twisted the salutary purposes of ERISA in a furtive attempt to shield assets which were, at the time of their transfer to the benefit plans, already the subject of pending litigation. It is doubtful any federal court would extend ERISA so far as to cover breach of a fiduciary duty as exists here. We hold that under the facts of this case ERISA does not preempt state law and the application of the "trust pursuit rule" relied upon by the trial court. See *Kline v. Orebaugh,* 214 Kan. 207, 519 P.2d 691 (1974).

Finally, Barry contends that even if the retirement and profit sharing funds can be garnished to satisfy plaintiff's judgment, only one-half of the total funds are subject to the order. The argument obviously lacks merit. The receiver of UPI was directed to inventory and marshal all of the assets of the corporation and these funds stand in no different position than any other assets subject to liquidation by the receiver.

The judgment is affirmed.

LOCKETT, J. not participating.