PLANNED CONSUMER MARKETING, INC., Appellant, v COATS & CLARK, INC., Respondent.

COATS & CLARK, INC., Respondent, v DRY DOCK SAVINGS BANK et al., Respondents, and EDWIN LEE, Individually and as Alleged Trustee of the Planned Consumer Marketing, Inc., Profit Sharing Plan, Appellant.

First Department, March 26, 1987

APPEARANCES OF COUNSEL

*Stanley Geller* of counsel *(Butler, Jablow & Geller,* attorneys), for Planned Consumer Marketing, Inc., appellant.

*Edwin Lee,* appellant *pro se.*

*Joseph J. Schiavone* of counsel *(Edwin David Robertson* with him on the brief; *Cadwalader, Wickersham & Taft,* attorneys), for respondent.

## OPINION OF THE COURT

CARRO, J.

This proceeding was brought by Coats & Clark, Inc., pursuant to CPLR 5225 and 5227, seeking a turnover to petitioner of funds contained in bank accounts in the name of the Planned Consumer Marketing, Inc., Profit Sharing Plan, in order to satisfy a judgment awarded to Coats & Clark against Planned Consumer Marketing in 1981. As this appeal presents

the very difficult issue of whether there are any circumstances which permit a party to commence a proceeding in a State court to void transfers of corporate assets made to an employee benefit plan subject to Federal regulation under the Employee Retirement Income Security Act (ERISA; 29 USC § 1001 *et seq.*), it is important to set forth the facts of this case from the beginning.

Planned Consumer Marketing entered into two contracts dated May 1, 1973 and July 1, 1974, with Coats & Clark, agreeing to promote Coats & Clark's products. Coats & Clark refused to make payments under the second contract on the ground that Planned Consumer Marketing had not performed its obligations. Planned Consumer Marketing responded by commencing suit in 1975 against Coats & Clark seeking $150,000 for breach of the 1974 contract. Coats & Clark counterclaimed for recovery of the $100,000 paid under the 1973 contract and the $50,000 already paid under the 1974 contract.

The case was tried before a jury which rendered a verdict in favor of Planned Consumer Marketing on the first counterclaim, relative to the 1973 contract, and in favor of Coats & Clark in the amount of $50,000 on the second counterclaim, concerning the 1974 contract. The total judgment entered against Planned Consumer Marketing in August of 1981, including interest and additional costs, amounted to $72,838.75, which amount, with postjudgment interest still accruing, has now surpassed $100,000.

Having been unable to collect any moneys from Planned Consumer Marketing, Coats & Clark commenced supplementary proceedings in May of 1982 at which it deposed Edwin Lee, president of Planned Consumer Marketing, Inc. According to Lee, Planned Consumer Marketing, the judgment debtor, had conducted no business and had no employees since 1977 or 1978. Although Lee claimed that in 1980 and 1981 the judgment debtor had no assets, its bank accounts at Irving Trust Company and Chemical Bank during that time totaled between $150,000 to $200,000. These assets have since been entirely dissipated, despite the lack of corporate operations or expenses. Judgment creditor, Coats & Clark, has been able to trace a substantial portion of the dissipated assets to accounts at Dollar-Dry Dock Savings Bank in the name of Planned Consumer Marketing, Inc., Profit Sharing Plan.

The Profit Sharing Plan (the Plan), an employee benefit

plan such as described in and covered by ERISA, was established in December of 1974, after Coats & Clark had entered into a contract with Planned Consumer Marketing. In a letter dated June 7, 1979, the Internal Revenue Service found the Plan to be a qualified ERISA plan. The Plan's beneficiaries are Edwin Lee, his brother Jules Lee, whose services to Planned Consumer Marketing could not be substantiated, and Carolyn Curtis, Edwin Lee's secretary. Edwin and Jules Lee are the trustees of the Plan.

In 1977, during the pendency of Coats & Clark's counterclaims, the Plan's assets increased from approximately $20,000 to $100,000. Lee explained this suspicious increase as representing a legitimate rollover of assets of a plan of another corporation that he controlled and which he later dissolved. However, Lee failed to present any documentation supporting that claim. By 1981, the Plan's assets had inexplicably grown to over $150,000.

Despite the fact that the beneficiaries of the Plan are no longer employees of the judgment debtor and the Plan provides for distribution of benefits upon a beneficiary's termination of employment, no distribution to any beneficiary has ever been declared or made. Having discovered this information, Coats & Clark served restraining notices on Dry Dock Savings and Dollar Savings Banks, now merged as Dollar-Dry Dock Savings Bank, effectively freezing the assets of the Profit Sharing Plan for the last four years.

In May of 1983, Coats & Clark then commenced a turnover proceeding pursuant to CPLR 5225 and 5227 against Dollar-Dry Dock Savings Bank and Edwin Lee, individually and as alleged trustee of the Profit Sharing Plan, asserting nine causes of action. The first cause of action alleges that the Plan does not legally exist, based upon Planned Consumer Marketing's refusal to produce any indenture of trust, despite being under court order to do so. However, as the result of this motion to dismiss, the judgment creditor has since been supplied with the terms of the purported Profit Sharing Plan and the trust agreement, both dated December 1974.

The second cause of action alleges that the purported trustees, Edwin and Jules Lee, commingled funds in the Plan accounts, failed to keep records, allowed unqualified persons to participate in the Plan, and used assets of the Plan for corporate purposes and the personal purposes of the trustees, in violation of Federal and State law and in contravention of

the terms of the Plan, thus requiring that the Plan be disregarded as a separate legal entity and treated merely as an asset of the judgment debtor.

The third, fourth, fifth and seventh causes of action allege that the Plan was created and enhanced in value through fraudulent conveyances, as defined in Debtor and Creditor Law §§ 273, 273-a, 274 and 276, such that the rights of the judgment creditor, Coats & Clark, to the Plan's assets are superior to those of any other person. The sixth cause of action alleges that Edwin Lee, as Director of Planned Consumer Marketing, made distributions of corporate assets to the Plan which were unlawful under the Business Corporation Law, rendering Lee personally liable to the judgment debtor, for the benefit of the judgment creditor, out of Lee's interest in the Plan assets.

The eighth cause of action seeks to pierce the corporate veil of Planned Consumer Marketing and disregard its separate legal existence vis-à-vis Edwin Lee, so that the judgment against the corporation can be enforced against Lee's interest in the Plan assets. Finally, the ninth cause of action alleges that the Plan was created and enhanced in value by the corporation and Lee for the benefit of the corporation and the personal benefit of Edwin Lee, in violation of EPTL 7-3.1, which bars use of a self-settled trust to evade creditors, with the result that the judgment against the corporation can be enforced against the Plan assets.

The answer asserted various affirmative defenses, including lack of subject matter jurisdiction based upon the preemptive provisions of ERISA, and the failure to join Jules Lee and Carolyn Curtis as necessary parties to this action.

In the judgment appealed from, Justice Ostrau rejected these defenses. The court found that it was not necessary to join the other individual beneficiaries, so long as the judgment creditor did not seek to reach their interest in the Plan. As to the arguments of preemption and exclusive Federal court jurisdiction, the court found that, as opposed to an action which would affect the regulation of a qualified plan, ERISA does not preclude a State court action which seeks to set aside allegedly fraudulent transfers of corporate assets to a profit sharing plan.

In March of 1985, the Plan and Lee moved to renew their motion to dismiss the petition for lack of subject matter jurisdiction on the basis of *Retail Shoe Health Commn. v*

*Reminick* (62 NY2d 173). That decision barred a third-party complaint against the trustees of an employee welfare plan, because the gravamen of that complaint was the breach of the trustees' fiduciary duties, duties specifically regulated under ERISA. The movants herein argued that the judgment debtor's nine causes of action involve the breach of Edwin Lee's fiduciary duties as Plan trustee, requiring dismissal of the petition on the authority of *Retail Shoe Health Commn. v Reminick (supra)*. The court below granted renewal but adhered to its original determination to deny the motion to dismiss in its entirety.

In the absence of persuasive evidence to the contrary, a presumption exists that State law is not preempted by Federal statute. *(Sasso v Vachris,* 66 NY2d 28, 33.) Determining whether or not preemption is required is largely a question of congressional intent, and that inquiry commences with the statutory language itself. *(Northwest Airlines v Roemer,* 603 F Supp 7, 9.)

In 1974, Congress enacted ERISA with the express purpose of protecting the financial interests of participants and beneficiaries of qualified employee welfare and pension plans by preserving the soundness and stability of such plans through comprehensive Federal supervision. (29 USC § 1001 [a].) Provisions were enacted which, among other things, require certain disclosures and detailed reporting, set minimal standards for participation, vesting and accrual of benefits in the plans, and set standards by which to regulate the conduct of trustees of the plans. To avoid conflicting regulation from State laws and to ensure uniformity *(Cornell Mfg. Co. v Mushlin,* 70 AD2d 123, 127-128) ERISA expressly provides that its provisions shall supersede all State laws insofar as they relate to any employee benefit plan (29 USC § 1144 [a]) and provides that the District Courts of the United States shall have exclusive jurisdiction over civil actions arising under ERISA, with an exception not applicable here. (29 USC § 1132 [e].) State laws which have the effect of regulating the terms or conditions of employee benefit plans are clearly preepted, while those which affect employee benefit plans only in a remote and tenuous manner, and do not conflict with the purposes of ERISA, are not preempted. *(See, Sasso v Vachris, supra,* at 32, and cases cited therein; *Smith v Crowder Jr. Co.,* 280 Pa Super 626, 421 A2d 1107, 1113.)

In *Retail Shoe Health Commn. v Reminick* (62 NY2d 173, *supra),* the Court of Appeals ruled that the substantive rules

of ERISA setting forth the duties of fiduciaries of a qualified plan vis-à-vis the participants and beneficiaries of the plan and the funds of a plan once they are transferred to the plan (29 USC §§ 1103-1109), preempt a counterclaim asserted in a State court action based on the trustees breach of their fiduciary duties in permitting and condoning the defalcations of the administrator of the employee benefit plan. *(Supra,* at 178.)

■ Lee, individually and as Plan trustee, argues that the gravamen of all nine of petitioner's causes of action implicate or directly involve the trustee's alleged breach of fiduciary duties under the Plan, which claims are subject to resolution only under Federal substantive law and jurisdiction. That argument is certainly correct with respect to the first and second causes of action. The first cause of action, alleging that the Plan has no legal existence because no written indenture of trust has been produced which would establish the Plan's existence, is now moot as the written indenture of trust has been produced. Even had it not been, however, the legality of the documents required to establish such a plan would not be the proper subject of a State court action as that subject is specifically addressed by ERISA in 29 USC §§ 1102, 1103.

■ In the second cause of action, the judgment creditor alleges commingling and failing to segregate assets of the Plan, failure to keep records regarding the Plan, allowing unqualified persons to participate in the Plan and use of assets of the Plan for corporate purposes of the judgment debtor and personal purposes of the trustees. These allegations specifically call into question the trustees' possible violations of those substantive provisions of ERISA which set forth required reporting and disclosure procedures, prohibited transactions and criminal and civil penalties (29 USC §§ 1021-1031, 1103-1109, 1131-1132), which claims are subject to the preemption provisions of 29 USC § 1144 (a). *(Retail Shoe Health Commn. v Reminick, supra,* at 178.)

■ We find, however, that the third, fourth and fifth causes of action, which allege that the Plan was used as an instrument of fraud to defeat the rights of the judgment creditor and that such fraudulent transfers to the Plan are therefore void under various sections of article 10 of the Debtor and Creditor Law, are not preempted. The third cause of action states a claim under section 276 of the Debtor and Creditor Law. It alleges that the judgment debtor created the Plan and conveyed its assets to the Plan with the intent to defraud,

hinder or delay its creditors. The fourth cause of action is grounded in sections 273 and 273-a of the Debtor and Creditor Law and states that the judgment debtor created and enhanced the funding of the Plan at a time when the judgment debtor was a counterclaim defendant and was insolvent or would be rendered insolvent by such transfers which lacked fair consideration. Under the fifth cause of action, the judgment creditor alleges that the corporate debtor's conveyances to the Plan were fraudulent under section 274 of the Debtor and Creditor Law, because they were made at a time when the judgment debtor was engaged in or about to engage in a business or transaction for which the property remaining in its possession would be unreasonably small capital. Accordingly, the judgment creditor, as a defrauded creditor, seeks to set aside the conveyances and, pursuant to CPLR 5225 and 5227, claims rights superior to those of any other persons with respect to the funds contained in the accounts at the Dollar-Dry Dock Savings Bank in the name of the Plan.

Contrary to the assertions of the Plan and Lee, the gravamen of these causes of action is not that Lee breached his fiduciary duties as a Plan trustee. Rather, these actions are based on the wrongdoing of Planned Consumer Marketing, as a debtor, in fraudulently transferring assets belonging to the corporation to the Plan with the purpose or effect of defrauding the judgment creditor. The focus of these causes of action, then, is not the Plan trustee's intent or conduct with regard to the Plan's assets once they are in the fund, a matter which would be regulated by ERISA. To the contrary, the focus will be on the intent and conduct of Planned Consumer Marketing, through its director, president and major shareholder, Edwin Lee, in essentially stashing away corporate assets and shielding them from the legitimate claims of a corporate creditor. The circumstances relevant to resolving such a claim will be the corporate debtor's financial status, the timing of the conveyances, the excessiveness of the employer contributions and the existence of an intent to defeat the rights of Coats & Clark as a corporate creditor, circumstances which do not relate at all to the terms and conditions of the Plan as an employee benefit plan. The identity of the Plan as the instrumentality of that fraud is quite tangential to these issues. These allegations, supported as they are by documentation from various bank accounts, certainly make out valid claims under State law, which we conclude are not preempted by ERISA.

In determining whether a cause of action brought under State law is preempted by ERISA, examination of the following factors, as set forth in the Second Department case of *Cornell Mfg. Co. v Mushlin* (70 AD2d, at 130) is particularly useful: "(1) the extent to which the law in question relates to an area traditionally within the State's domain * * * (2) the extent to which the purpose or effect of the law impinges upon employee benefit plans * * * (3) the extent to which the relief sought or procedures employed are incompatible with those of ERISA * * * and (4) the extent to which the rights sought to be enforced by the aggrieved party actually arise under an employee benefit plan".

In *Cornell Mfg. Co. v Mushlin (supra),* these factors were examined with respect to an action raising claims similar to those raised herein, resulting in a finding of nonpreemption. In that case, a corporation sought to recover damages from corporate officials for their self-dealing and waste of corporate assets, committed in part by the dispersal of excessive payments to the corporate pension plan of which they were beneficiaries, in violation of the Business Corporation Law. After concluding that the claims did not arise under the provision of an ERISA plan or the ERISA statute, that suits holding corporate officials responsible for misconduct have long been within the domain of State courts and served purposes unrelated to those served by ERISA, and that the relief which plaintiffs sought, to hold the defendants personally liable, was not incompatible with the aims of ERISA and did not impinge upon the employee benefit plan, the court ruled that the action was not preempted despite its incidental relation to the employee benefit plan.

Regarding the relation of the action to the pension plan, the court stated (70 AD2d 123, 130, *supra):*

"the involvement of the pension plan in the fraudulent scheme alleged here was at most incidental. If plaintiff's allegations are true, the Mushlins wrongfully depleted corporate assets by causing excessive payments to be made into the pension plan which they controlled and from which they then received inordinate benefits. In essence, the pension plan was nothing more than the instrumentality by which the Mushlins accomplished the alleged misappropriation of plaintiff's funds. We do not believe that ERISA was meant to shield such misconduct from State law especially where, as here, no interest protected by the act is involved. Plaintiff has not brought suit against the Mushlins as former pension plan

trustees. Instead, plaintiff is attempting only to enforce rights arising from Mr. Mushlin's duty as director and officer of the corporation.

"Significantly, were the pre-emption argument to prevail, plaintiff would be without an adequate remedy as against the Mushlins since it would lack standing to sue under the provisions of the act (see US Code, tit 29, § 1132, subd [a]; cf. *Stone v Stone,* 450 F Supp 919, 933, *supra).*"

The facts here dictate the same result, for the wrongs allegedly committed herein likewise involve the use of an employee benefit plan as an instrument or conduit for a fraud said to have been perpetrated against the judgment creditor.

Clearly, laws aimed at protecting the interests of creditors traditionally fall within the States' domain. Such laws do not attempt to regulate either directly or indirectly the terms or conditions of employee benefit plans. It is only because the Planned Consumer Marketing, Inc., Profit Sharing Plan was the instrument of the corporation's alleged fraud that the Plan is at all involved in this action. The purpose of ERISA, viz., to protect the financial stability of qualified plans against the mismanagement by trustees of a plan, is different from and not in conflict with a State's interest in assuring that the legitimate claims of creditors are not defeated by the fraudulent tactics of a debtor. The rights sought to be enforced, moreover, completely derive from State laws and do not arise from an employee benefit plan. However, the relief requested, to set aside the conveyances to the plan and permit the judgment to be satisfied against those fraudulent conveyances, may, at first glance, appear to be incompatible with the purpose of ERISA in preserving employee benefit plan funds, and must, accordingly, be addressed at length.

In *Helmsley-Spear, Inc. v Winter* (74 AD2d 195), Helmsley-Spear, Inc. commenced an action to enforce a judgment entered against one of its employees who had embezzled funds from the corporation. Although the employee benefit plan was never the instrument of that fraud, the trial court issued an order of attachment on, among other property, the employee's interest in the employee benefit plan. This court, interpreting the effect of 29 USC § 1056 (d) on the defendant's interest in the employee benefit plan, held that "to the extent that it [that interest] was valid," such an interest was exempt from claims of creditors. *(Supra,* at 197.)

Section 1056 (d) (1) of title 29 of the United States Code

states: "Each pension plan shall provide that benefits provided under the plan may not be assigned or alienated." An Internal Revenue Service regulation, promulgated pursuant to ERISA, further declares "that benefits provided under the plan may not be * * * assigned * * * alienated or subject to attachment, garnishment, levy, execution or other legal or equitable process." (Treas Reg § 1.401[a]-13 [b] [1] [1980].) This court found that these provisions are indicative of the strong public policy purpose manifested in ERISA against forfeiture of benefits of an employee benefit plan. (*Helmsley-Spear, Inc. v Winter, supra*, at 197.) The *Helmsley-Spear* decision has since been affirmed by the Court of Appeals for the reasons stated in the opinion of Justice Silverman. (*Helmsley-Spear, Inc. v Winter*, 52 NY2d 984.)

Unlike *Helmsley-Spear (supra)*, however, the wrongdoing here does affect the validity of transfers made to an employee benefit plan. If the petitioner succeeds on these causes of action brought under the Debtor and Creditor Law, the legal result would be that the conveyances made to the plan, would, as they would to any other transferee, be rendered null and void as against the defrauded creditor, and the transferee of those funds would be cast in the role of constructive trustee of the assets, reachable by the wrongdoer's creditors. (*See, Julien J. Studley, Inc. v Lefrak*, 48 NY2d 954, 956.)

The question of whether a constructive trust for the benefit of a defrauded creditor can be imposed on funds of an ERISA qualified employee benefit plan, which have been determined to have been fraudulently made and are therefore void under State law was not addressed by this court in *Helmsley-Spear (supra)*, nor has it been addressed by any appellate New York court. This exact question has been addressed in a decision of the Kansas Supreme Court in *Goben v Barry* (237 Kan 822, 703 P2d 1378).

In that case, a corporate official, Barry, in violation of his fiduciary duty under State law to his associate Goben, established for his benefit and that of his family, a profit sharing plan, found to be a qualified plan under ERISA, and funded it with corporate assets which were then the subject of a court action based on Barry's breach of fiduciary duties to Goben. The court held such conveyances to have been void and ineffective and subject to attachment by Goben in a State action, despite the preemptive effect of 29 USC § 1144 (a). The court stated: "State law should be preempted only to the extent necessary to protect achievement of the purposes of the

federal act in question. Defendant in this case has twisted the salutary purposes of ERISA in a furtive attempt to shield assets which were, at the time of their transfer of the benefit plans, already the subject of pending litigation. It is doubtful any federal court would extend ERISA so far as to cover breach of fiduciary duty as exists here. We hold that under the facts of this case ERISA does not preempt state law and the application of the 'trust pursuit rule' relied upon by the trial court." (237 Kan 822, 828, 703 P2d 1378, 1383, *supra.)*

Disagreeing with the ruling of *Goven v Barry (supra)* appellants Profit Sharing Plan and Lee point to a Pennsylvania case *(Smith v Crowder Jr. Co.,* 280 Pa Super 626, 421 A2d 1107, *supra)* to argue that ERISA's purpose of protecting the integrity of the funding of employee benefit plans may be in conflict with any remedy which seeks to void employer contributions to a plan. In *Smith v Crowder Jr. Co. (supra),* a Pennsylvania intermediate appellate court held that a minority shareholder was not preempted from bringing an action in State court alleging breach of fiduciary duties and waste of corporate assets in the funding of the employee stock ownership plan, in which a number of shareholder-corporate officials, who also served as plan trustees, held a significant interest. *(Supra,* at 1113.) The court noted that the provisions in ERISA with respect to funding merely require that a plan establish and maintain a funding standard account in accordance with 29 USC § 1082 (b), (c) and avoid an accumulated funding deficiency as defined in 29 USC § 1082 (a); § 1085.

The court found, however, that ERISA does not regulate the transfers of assets by an employer to an employee benefit plan. Furthermore, the court noted that even when such transfers are fraudulent under State law, as against creditors or shareholders, they may not be unlawful under ERISA nor, perhaps, under any Federal law, since corporations, being creatures of the State, are generally answerable only to State law. (280 Pa Super 626, 421 A2d 1107, 1114, *supra.)* The court concluded that ERISA dictates only what duties trustees have regarding assets that are in the plan, but does not regulate which assets an employer may transfer to the plan. *(Supra.)* It was therefore obvious to the Pennsylvania court that "ERISA was not intended as a device to permit corporate directors and officers to defraud with impunity corporate shareholders and creditors by funneling the corporation's assets into an employee benefit trust." *(Supra,* at 1114.) The court was "therefore reluctant to accept appellants' contention that Congress

meant to abrogate traditional state remedies for the protection of shareholders and creditors against corporate mismanagement and fraud in the absence of federal remedies replacing them." *(Supra,* at 1114.)

Nevertheless, the court failed to determine decisively whether or not State courts could rescind those fraudulent transfers and avoided that issue by concluding that there was no conflict with ERISA in merely holding the corporate officers personally liable for their wrongful conduct.

■ Assuming that the judgment creditor herein makes out his case of fraudulent conveyances, we hold that there is no conflict with the purposes of ERISA in permitting recision of those fraudulent conveyances. The alleged fraudulent conveyances were made at a time when as in *Goben v Barry (supra),* the parties were in litigation, the corporate-debtor's business was dormant, had no employees, and was insolvent or rendered insolvent by the transfers, which far exceeded what was necessary to maintain the profit sharing plan. Also, besides Lee there are only two other beneficiaries of the Plan, and their employment relationship to the corporation is, at best, questionable. Moreover, Lee claims to be entitled to 80% of the funds. Because Lee was the only beneficiary served and individually named in this action, only his portion can be used to satisfy the judgment, to the extent that the fraudulent transfers can be traced to those funds.

While the preservation of funds validly invested in an employee benefit plan is a primary objective of ERISA, it is certainly not the intent of that statute to protect the fraudulent use of an employee benefit plan whereby a corporation strips itself of its assets and transfers them to an employee benefit plan created for the primary benefit of a director or major shareholder, who acts to defraud the corporation's creditors. To the extent that the corporation's assets were unlawfully transferred to the Plan in order to defeat the rights of the corporation's creditors, none of the salutary purposes of ERISA is thwarted by permitting recision of those transfers. We, therefore, hold that the third, fourth and fifth causes of action are not preempted and that the relief requested, limited to Lee's interest in the Plan, is not prohibited by ERISA.

■ The sixth cause of action alleges that, as director of the judgment debtor, Edwin Lee is personally liable under the Business Corporation Law to the corporate debtor for unlaw-

ful distributions of corporate assets, and petitioner is entitled to satisfy its judgment from Lee's interest in the assets of the Plan. It is apparent from the allegations made in the earlier causes of actions, incorporated in this cause of action, that the alleged unlawful transfers were those made to the Employee Benefit Plan. It also appears from the wording of this cause of action that it is grounded on sections 510 and 719 of the Business Corporation Law. If so, however, the remedies provided under section 719 for enforcement of a director's liability are given exclusively to the corporation, not to creditors of the corporation. (See, Legislative Studies and Reports, McKinney's Cons Laws of NY, Book 6, Business Corporation Law § 719, at 490-491; 3 White, New York Corporations § 719.01 [13th ed].)

Accordingly, although no argument for dismissal on this ground was made below, we note that the judgment creditor is not the proper party to bring an action under section 719 of the Business Corporation Law, and the sixth cause of action must be dismissed. Although petitioner was never on notice of this ground for dismissal, it is not prejudiced thereby, since there is no evidence which petitioner could have submitted that would have established its capacity to sue under section 719. Therefore, under respondents-appellants' general relief cause, we grant the motion to dismiss this cause of action. (See, Wolfe v Bellizzi, 58 Misc 2d 773, 776.)

Even if petitioner were the proper party to bring an action under section 719, a further substantive problem with this cause of action is that section 719 permits a corporation to bring an action to hold directors personally liable for their misconduct and does not authorize an action to set aside unlawful conveyances or transfers of corporate assets. Section 720 of the Business Corporation Law, on the other hand, does permit an action against a director by a judgment creditor and permits an action to set aside an unlawful conveyance, where the transferee knew of its unlawfulness. However, even under this State's liberal rules regarding construction of pleadings, we cannot conclude that the essential elements of a cause of action under section 720 have been pleaded. Accordingly, we dismiss this cause of action, without prejudice, and grant Coats & Clark leave to replead.

The seventh cause of action poses problems as well. It alleges that the corporate debtor and Lee, as its director, made unlawful transfers of corporate assets to Edwin Lee and others in violation of sections 273, 273-a, 274 and 276 of the

Debtor and Creditor Law and sections 510 and 719 of the Business Corporation Law, thereby rendering Lee personally liable to the judgment debtor and entitling the judgment creditor to satisfy its judgment against Lee's interest in the Plan. We have already noted that a judgment creditor is not a proper party to bring an action under sections 510 and 719 of the Business Corporation Law, requiring that so much of the cause of action as is based on these sections be stricken.

The problem with the remainder of this cause of action is the inappropriateness of the relief requested. The subject of this cause of action is the making of illegal transfers of corporate assets to Lee and unnamed others. The alleged unlawful transfers to the Plan are the subject of the third through fifth causes of action. As to those causes of action, we determined that it was proper to set aside those transfers, even though they had been made to a qualified, ERISA-regulated plan, because the transfers were fraudulently made, therefore void and ineffective, and because Congress never intended that ERISA be invoked to shield the use of an employee benefit plan as an instrumentality of fraud to defeat the rights of creditors.

Contrarily, under this cause of action, petitioners seek to set aside Lee's interest in the Plan, even though the misconduct alleged does not involve the transfer of corporate assets to the Plan. Permitting such relief would contravene the purpose of ERISA, as we held in *Helmsley-Spear, Inc. v Winter* (74 AD2d 195, *supra*). When the misconduct does not involve or vitiate the validity of the actual transfers of funds to an employer benefit plan, the purposes of ERISA would be seriously compromised if State courts were to permit an aggrieved creditor to reach an employee's interest in those funds. *(Supra,* at 197-198.) To the extent the theory of liability is not conditioned on proving the invalidity of transfers of funds to an ERISA plan, ERISA exempts those funds from the collection of creditors. Accordingly, that part of the cause of action which seeks relief against Lee's interest in the Plan must be stricken.

However, the allegations raised in this cause of action do entitle the petitioner to some relief under State law. To the extent that petitioner can prove that Lee as an individual was the transferee of any unlawful transfers of corporate assets, then, under the Debtor and Creditor Law, those transfers may be voided as against the defrauded creditor and may be made available to the creditor for satisfaction of its judgment.

Because petitioner would be entitled to some relief under State law, it is of no moment to the sufficiency of this cause of action that the relief requested is improper. The prayer for relief in a complaint is not a part of the cause of action and does not warrant a dismissal for insufficiency when the facts alleged demonstrate some right to relief. *(Philips v Republic Ins. Co.,* 67 AD2d 725; *Lehmann v Kingston Plaza,* 44 Misc 2d 63, 65.)

CPLR 3017 (a) permits a court, with exceptions not relevant here, to "grant any type of relief within its jurisdiction appropriate to the proof whether or not demanded". Pursuant to CPLR 5225, under which this turnover petition is brought, a petitioner and judgment creditor may commence a special proceeding to turn over to it money or property in the possession or custody of another person, but which belongs to the judgment debtor, or in which the judgment creditor has rights superior to those of the transferee. Thus, if in fact improper transfers of corporate assets were made to Lee personally and they are voidable under the provisions of article 10 of the Debtor and Creditor Law, the trial court is empowered pursuant to CPLR 3017 to grant the appropriate relief as against those transfers. Therefore, we strike only the demand for relief and so much of this cause of action as seeks to hold Lee personally liable under the Business Corporation Law to the corporation for his alleged breach of fiduciary duties as a director.

The eighth cause of action is one to pierce the corporate veil. It alleges that Edwin Lee singlehandedly controlled the activity of the judgment debtor, without regard for corporate formalities, inadequately capitalized the judgment debtor, commingled funds of the corporation with his own, and operated the judgment debtor for his own personal purposes. Petitioner thus seeks to hold Lee personally liable for the debts of the judgment debtor and seeks to satisfy petitioner's judgment out of Lee's interest in the Plan. The above allegations, especially in the context of an action by an allegedly defrauded creditor in which it is alleged that the corporation is seeking to evade its obligations, present a strong case for piercing the corporate veil and holding Lee, as the corporation's alter ego, personally liable for the corporation's debts. *(See generally,* 13 NY Jur 2d, Business Relationships, §§ 26-28.) However, consistent with the above discussion, Lee's assets in the Plan cannot be reached under this cause of action, since the allegations are not related to Lee's stashing away corpo-

rate assets in the Profit Sharing Plan. Thus, we strike the prayer for relief in this cause of action and direct that the trial court grant whatever relief is appropriate, consistent herewith.

The ninth cause of action alleges that the Plan as a whole is void because it was created by the judgment debtor and Edwin Lee, for the benefit of the judgment debtor and for Lee's personal benefit, and assets of the Plan were used for such purposes, in violation of EPTL 7-3.1. EPTL 7-3.1 voids, as against creditors, a disposition in trust for the use of the creator. This provision was enacted in recognition of the rule, applicable in all jurisdictions which recognize spendthrift trusts, "that a property owner cannot utilize a spendthrift trust to insulate his assets from the reach of present or future creditors." *(Vanderbilt Credit Corp. v Chase Manhattan Bank,* 100 AD2d 544, 546.)

■ This cause of action necessarily depends on petitioner's success in proving the allegations raised in the eighth cause of action, which allegations were incorporated in the within cause of action. Petitioner must establish that Lee is the alter ego of the corporation and thus, in effect, is the creator-settlor of the trust, the Profit Sharing Plan, which allegedly was established for his benefit and to defeat the rights of creditors of the corporation. Such a theory states a cause of action under EPTL 7-3.1. However, so much of this cause of action as alleges misuse of the Plan's assets, as opposed to fraud in the creation and funding of the Plan, must be stricken. Mismanagement of the assets of a qualified, ERISA-regulated plan is, as we noted with reference to the second cause of action, a matter substantively regulated by ERISA provisions, thus preempting a State cause of action grounded in mismanagement of plan funds. *(Retail Shoe Health Commn. v Reminick,* 62 NY2d 173, 178, *supra.)* However, if the Plan is void because it is a spendthrift trust created to defraud the corporation's creditors, the assets of the Plan may, as in the third through fifth causes of action, be reached by the judgment creditor herein. ERISA simply was not enacted to give a license to employers to use an employee benefit plan as an instrument to defraud creditors.

Accordingly, the judgment of the Supreme Court, New York County (Stanley Ostrau, J.), entered April 16, 1984, denying respondent-appellant's motion to dismiss the turnover petition for lack of subject matter jurisdiction on the grounds of preemption by Federal law, April 16, 1984, is modified, on the

law, to the extent of granting the motion to dismiss as to the first and second causes of action, striking the relief requested in the seventh and eighth causes of action and striking so much of the ninth cause of action as alleges misuse of the employee benefit plan funds, and the court *sua sponte* dismisses the sixth cause of action with leave to the petitioner to replead and additionally strike so much of the seventh cause of action as is grounded on sections 510 and 719 of the Business Corporation Law, and the judgment is otherwise affirmed, without costs.

MURPHY, P. J., MILONAS and WALLACH, JJ., concur.

Judgment, Supreme Court, New York County, entered on April 16, 1984, unanimously modified, on the law, to the extent of granting the motion to dismiss as to the first and second causes of action, striking the relief requested in the seventh and eighth causes of action and striking so much of the ninth cause of action as alleges misuse of the employee benefit plan funds, and the court *sua sponte* dismisses the sixth cause of action with leave to the petitioner to replead and additionally strike so much of the seventh cause of action as is grounded on sections 510 and 719 of the Business Corporation Law, and the judgment is otherwise affirmed, without costs and without disbursements.